PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2797
_____

ANDREA CONSTAND

v.

WILLIAM H. COSBY, JR.,

Appellant

THE ASSOCIATED PRESS,

Intervenor-Appellee
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-05-cv-01099)
District Judge: Honorable Eduardo C. Robreno
_____

Argued April 13, 2016

Before: AMBRO, SMITH and KRAUSE, Circuit Judges

(Opinion filed: August 15, 2016)

George M. Gowen, III, Esquire    (Argued)
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA   19103

Patrick J. O'Connor, Esquire
Cozen O'Connor
200 Four Falls Corporate Center
P.O. Box 800, Suite 400
West Conshohocken, PA   19428

     Counsel for Appellant

Gayle C. Sproul, Esquire   (Argued)
Elizabeth Seidlin-Bernstein, Esquire
Levine Sullivan Koch & Schulz
1760 Market Street, Suite 1001
Philadelphia, PA   19103

     Counsel for Intervenor-Appellee

―――――――――

OPINION OF THE COURT

―――――――――

AMBRO, Circuit Judge

William H. Cosby, Jr., appeals the District Court's order unsealing certain documents that reveal damaging admissions he made in a 2005 deposition regarding his sexual behavior. There was no stay of that order, and the contents of

the documents received immediate and wide publicity. While the parties dispute whether the District Court properly balanced the public and private interests at stake in unsealing the documents, we must decide at the outset whether Cosby's appeal has become moot due to the public disclosure of their contents. The Associated Press (the "AP") argues in favor of mootness because resealing the documents after they have already become public will have no effect. Cosby claims this is not the case for two primary reasons, as resealing the documents would (1) at least slow the dissemination of their contents and (2) might affect whether they can be used against him in other litigation. For the reasons that follow, we conclude that the appeal is moot.[1]

## I. BACKGROUND

The unsealed documents result from a complaint filed by Andrea Constand against Cosby in the District Court in March 2005. Constand alleged that Cosby had drugged and sexually assaulted her at his home. As part of the discovery process, Constand's counsel took Cosby's deposition and questioned him regarding his relationships with other women, including whether any of these women had ingested Quaaludes prior to a sexual encounter.[2] The deposition

---

[1] The District Court had jurisdiction to hear this case under 28 U.S.C. § 1332. We have jurisdiction to determine if this appeal is moot, *see White-Squire v. U.S. Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010), but as we conclude that it is, we lack jurisdiction to decide the merits of it. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam).

[2] "'Quaalude' is the brand name for the drug Methaqualone, a non-barbiturate sedative-hypnotic that is a general depressant of the central nervous system." *Mendoza*

resulted in discovery disputes and the parties prepared to litigate those disputes before the District Court.

After a telephone conference with counsel, the Court entered an interim order in November 2005 requiring the parties to file under seal their discovery motions and any supporting documents. The AP then moved to intervene and oppose the sealing order. The Court denied the motion on the ground that the record was not yet sufficient to determine whether a permanent seal was warranted. It ruled that the interim sealing order would remain in effect until the parties had conducted all necessary depositions in the case, whereupon it would determine which documents should remain sealed.

As the discovery process continued, the parties filed 16 documents, the ones before us, under the interim sealing order. In certain of them, counsel for Constand and Cosby quoted excerpts from the transcript of Cosby's deposition and summarized portions of his testimony. As a result, the documents reveal that Cosby made a number of damaging admissions during his deposition, including that he had: (1) engaged in extramarital affairs; (2) acquired Quaaludes and engaged in sexual relations with a woman after she ingested the drug; and (3) given money to one woman and offered money to Constand.

---

*v. Secretary, Florida Dept. of Corrections*, 761 F.3d 1213, 1217 n.3 (11th Cir. 2014) (internal quotation marks omitted). As a result, ingesting Quaaludes may render someone incapable of consenting to sex. *See Gilardi v. Schroeder*, 672 F. Supp. 1043, 1045 (N.D. Ill. 1986). Though Quaaludes were legally available in the 1960s and 1970s, distribution of them is now a federal crime. Gerald F. Uelmen et al., 1 *Drug Abuse and the Law Sourcebook* § 3:58 (2015 ed.).

4

Before the District Court could rule on whether the documents should remain sealed permanently, Cosby and Constand reached a confidential settlement in October 2006, and the case was dismissed shortly thereafter. The interim sealing order nonetheless continued in effect and the documents remained sealed. Though in such circumstances the District Court's Local Rule 5.1.5(c) requires that the Clerk of Court send a notice to the attorney for the party who submitted the sealed documents stating that the documents will be unsealed unless an objection is filed,[3] eight years passed without the Clerk taking any action.

---

[3] Eastern District of Pennsylvania Local Rule of Civil Procedure 5.1.5(c) provides:

> If a document is still sealed at the conclusion of the two-year period and the Court has not entered an order continuing its sealed status beyond that time, the Clerk of Court shall notify the attorney for the party having submitted the sealed document at the attorney's address on the docket that the document will be unsealed unless the attorney or the submitting party advises the Clerk within (60) days that said attorney or submitting party objects. If the attorney or submitting party objects to the unsealing of the document or if the Clerk's notification is returned unclaimed, the Court will make a determination, on a case-by-case basis, whether to maintain the document under seal, to unseal it, or to require further notification.

5

That changed in December 2014 when the AP requested that the Clerk issue such a notice and within weeks the Clerk placed a notice on the District Court docket stating that the documents would be unsealed within 60 days unless an objection was filed. Cosby's counsel filed an objection and the District Court allowed the AP to intervene and argue for lifting the interim sealing order. The Court then set a briefing schedule and heard oral argument. Cosby did not at that time request a stay in the event that the Court ruled against him and unsealed the documents.

On July 6, 2015, the District Court issued an order that the documents be immediately unsealed and accompanied the order with a 25-page opinion explaining its reasoning. In order to balance Cosby's privacy interest against the public interest in access to the documents, the Court considered each of the factors we set out in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). In applying them, however, the Court relied on the novel rationale that Cosby had reduced privacy interests because he had "donned the mantle of public moralist and mounted the proverbial electronic or print soap box to volunteer his views on, among other things, childrearing, family life, education, and crime." While the parties extensively debate the propriety of this reasoning in their briefs, it attracted little notice at the time in light of the consequences of the accompanying order.

With no stay and the District Court's instruction that the Clerk unseal the documents "forthwith," an AP reporter discovered that the documents were publicly available and downloaded them within minutes of the online posting. Though Cosby's counsel emailed a stay request to the Court less than 20 minutes later, it was too late to prevent the media from publicizing Cosby's damaging admissions. The AP sent out a "news alert" reading "Documents: Cosby admitted in 2005 to getting Quaaludes to give to women he sought sex

6

with." Declaration of Maryclaire Dale, ¶ 4, Doc. No. 003112063414 (Sept. 2, 2015). Within hours, four more news organizations had published stories regarding the contents of the documents, and public interest in the story did not abate thereafter. Indeed, allegedly due to a misunderstanding of the scope of the Court's order by a court reporting service, The New York Times obtained a full transcript of the deposition and published excerpts on its website. In the wake of this publicity, the District Court did not rule on Cosby's stay request, and he filed a notice of appeal to this Court.

At approximately the same time, Cosby and Constand became embroiled in a further dispute in the District Court. Each filed a motion for sanctions and injunctive relief, alleging breach of the confidential settlement agreement. The dispute ended when Constand and Cosby stipulated to dismissal of their motions for lack of subject matter jurisdiction.

While Constand declined to participate in this appeal, the AP filed a motion to dismiss it as moot in light of the public disclosure of the documents. Cosby argued that the appeal was not moot because we could still order the documents resealed. A motions panel of this Court issued a preliminary denial of the motion to dismiss and referred the matter to us.[4] *See* Order, Doc. No. 003112118113 (Nov. 2, 2015).[5]

---

[4] The denial was preliminary per Rule 10.3.5 of our Internal Operating Procedures:

A motion panel may grant a motion to dismiss an appeal. If the motion seeks dismissal for

7

## II. MOOTNESS

To say that an appeal is moot means that the court cannot provide the prevailing party with any relief. *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). If this is true, there is no longer a controversy to decide as required by Article III of the United States Constitution for the exercise of federal judicial power. *See id*. Thus, we lack the ability (that is, appellate jurisdiction) to decide it and "the appeal must be dismissed." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

As a result, our analysis is "centrally concerned with the court's ability to grant effective relief." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001). This is ordinarily a low bar, as "when a court can fashion *some* form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is

> lack of jurisdiction or for untimeliness, and the panel votes not to grant the motion, the motion is referred by order, without decision and without prejudice, to the merits panel.

[5] In addition to this litigation, Cosby also has been involved in numerous other legal proceedings that involve allegations of sexual assault. These proceedings include civil suits by other alleged victims against him, a lawsuit Cosby filed against one of his accusers, and a criminal proceeding in Montgomery County, Pennsylvania, stemming from the same alleged conduct as Constand's civil suit. These matters are not before us, however, and we are limited to deciding this particular appeal from the District Court's order unsealing the documents.

not moot." *In re Continental Airlines*, 91 F.3d 553, 558 (3d Cir. 1996) (internal quotation marks omitted) (emphasis in original). While the prospect of partial relief is sufficient to defeat mootness, mere speculation "afford[s] no basis for finding the existence of a continuing controversy as required by Article III." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 700 (3d Cir. 1996) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-73 (1976); *DeFunis v. Odegaard*, 416 U.S. 312, 320 n.5 (1974)). However, we may consider any evidence bearing on whether the appeal has become moot. *See Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992).

While Cosby argues that this appeal is not moot because we could provide him with partial relief by ordering the documents resealed, his own counsel has indicated that no meaningful relief is possible. In the request for a stay, Cosby's counsel told the District Court that "[o]f course, if the documents become public before … his appeal [is] decided," then an appeal "will be pointless." App. at 757a. Though the documents are public, Cosby now claims that resealing them would at least slow their dissemination. In particular, resealing them would prevent the Clerk of the District Court from continuing to provide official copies of the documents upon request (whether through the online PACER system or on paper).

We and our sister circuit courts have held that appeals seeking to restrain "further dissemination of publicly disclosed information" are moot.[6] Charles Alan Wright et al.,

---

[6] *United States v. Smith*, 123 F.3d 140 (3d Cir. 1997), is not to the contrary. There, prosecutors published on a Government website a sentencing memorandum arguably containing secret grand jury information, including the names of uncharged accomplices of defendants, in violation of

9

13C *Federal Practice & Procedure* § 3533.3.1 & n.35 (3d ed. 2008) (collecting cases). In *In re Orthopedic Bone Screw Products Liability Litigation*, 94 F.3d 110 (3d Cir. 1996), the Food and Drug Administration (FDA) accidentally disclosed the data underlying a medical study to the plaintiffs in a

---

Federal Rule of Criminal Procedure 6(e). *Id.* at 144. After publication, and after the uncharged individuals named in the sentencing memorandum complained to the District Court, it ordered the Government to remove the memorandum from its public website and to attempt to recover copies already distributed. *Id.* at 144-45. On appeal, we held that the risk of revealing additional, previously undisclosed, grand jury secrets justified continuing protective measures. *See id.* at 154.

In a *dictum*, we then rejected the news media's argument that the District Court was "powerless … to prevent all further disclosures by the [G]overnment" of secret grand jury information simply because that information had already been made public. *Id.* at 154. We noted that "[e]ven if the dissemination by members of the public continues, the order barring further disclosure of any secret grand jury material will at least narrow that dissemination." *Id.* at 155. This aspect of *Smith* is easily distinguished by the type of information disclosed (not to mention the changes in internet technology since the opinion issued, making it much less likely that resealing documents on a Government website will lessen their dissemination). Simply put, courts have a different — and significantly greater — institutional interest in preserving the integrity of the grand jury process than they do in protecting the information of private litigants. As this is a typical civil litigation involving private parties in which all of the documents at issue are already public, no such institutional interest is at stake here.

10

multi-district litigation. *Id.* at 110 n.1. The Scoliosis Research Society and Dr. Steven M. Mardjetko filed a motion to stay any public disclosure of the data, but the District Court denied the motion and authorized the plaintiffs to file the data in a public comment with the FDA. *Id.* at 110-11. We held that "[b]ecause that disclosure cannot now be undone, we will dismiss the appeal … as moot." *Id.* at 111. Public disclosure cannot be undone because, as the Second Circuit has explained in similar circumstances, "[w]e simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004); *see also Doe No. 1 v. Reed*, 697 F.3d 1235, 1238-1240 (9th Cir. 2012).

In light of the extensive publicity surrounding Cosby's admissions, we are similarly without power to affect the dissemination of the unsealed documents' contents in any meaningful way. Five prominent news organizations published articles about the documents within hours of the District Court's order, and the news media have repeated his damaging admissions countless times since then. Apart from the traditional press, a Google search for "Bill Cosby deposition testimony" yields as of August 12, 2016, 81,200 results, some of which include full copies of the documents bearing the District Court's PACER imprint. *See, e.g.*, Diana Moskovitz, *Here Are The Documents Bill Cosby Didn't Want You to Read*, Deadspin.com, (Jul. 6, 2015 6:42 PM), http://deadspin.com/here-are-the-documents-bill-cosby-didnt-want-you-to-rea-1716083975 (linking to full library of the documents). While these are not technically official records, "[i]f anyone with an internet connection can easily obtain images of the original documents online, it is not clear why anyone would bother filing an additional public records request." *Doe No. 1*, 697 F.3d at 1239. In short, when it comes to public awareness of the documents' contents, the

11

feathers of the pillow are scattered to the winds; nearly everyone in America (and many more around the world) with access to a computer either know what Cosby has admitted to doing or could find out with a few clicks, and this will remain true even if we order the documents resealed.

Any effect that resealing the documents might have on the numerous other legal proceedings that result from sexual assault allegations against Cosby (or might occur in the future) is simply not enough to present a live controversy in this appeal. Cosby argues that resealing the documents would leave him "better positioned" to persuade "the various courts in which he finds himself a party" to limit the use of the documents in the proceedings before them. Reply Br. at 1-2. In particular, he asserts that he could persuade these courts that the documents are inadmissible and cannot otherwise be used against him. *Id.*

This argument is fatally flawed. We held in *In re Cantwell*, 639 F.2d 1050 (3d Cir. 1981), that an appeal seeking "a 'firm basis'" to seek relief from another court "[i]n effect … ask[s] us to issue an advisory opinion, something we may not do." *Id.* at 1054. As advisory opinions are forbidden by Article III's requirement of a live controversy, the *Cantwell* Court concluded that the appeal before it was moot. *See id.* Given that Cosby expressly requests us to provide a basis to make an argument to other courts, he also requests an advisory opinion. Moreover, even if we could issue such an opinion, Cosby cites no authority to the effect that sealing documents in a civil case would render them inadmissible in another litigation—indeed, sealed documents are often admitted into evidence. *See, e.g.*, *United States v. Alexander*, 901 F.2d 272, 273-74 (2d Cir. 1990) (per curiam). Hence this argument is also too speculative to present us with a live controversy.

12

While Cosby cites several cases in which the possibility of an injunction limiting the future use of evidence obtained through grand jury proceedings was sufficient to defeat mootness — *see In re Grand Jury Investigation*, 445 F.3d 266 (3d Cir. 2006); *Gluck v. United States*, 771 F.2d 750 (3d Cir. 1985); *Matter of Special March 1981 Grand Jury*, 753 F.2d 575 (7th Cir. 1985); *United States v. Nix*, 21 F.3d 347 (9th Cir. 1994) — these cases do not give us any basis to meddle in the other proceedings involving sexual assault allegations against Cosby. Under Federal Rule of Civil Procedure 65(d)(2), a federal court's power to order that a binding injunction issue is limited to certain persons connected to the case before it:

> (A) the parties;
> (B) the parties' officers, agents, servants, employees and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in [subsections] (A) or (B).

As each of the cited cases concerned the possibility of an injunction against either the Government as a party to the grand jury proceedings or those who had received grand jury materials from the Government, there was no reason to doubt the court's power to order such an injunction under Rule 65(d)(2). In this appeal, however, Cosby has not identified whom he would seek to enjoin, and to the extent that he suggests it would be his adversaries in other cases, they are not parties to this litigation and Cosby does not allege that they are acting in concert with any party.[7] We thus have no

---

[7] Although Beth Ferrier and Rebecca Cooper, two plaintiffs against Cosby in another case, moved to intervene in the proceedings regarding alleged breach of the settlement

13

basis to conclude that that there is any "potential availability of a future-use injunction" to save this appeal from mootness. *See In re Grand Jury Investigation*, 445 F.3d at 273.

We have considered Cosby's remaining arguments against mootness and find them unpersuasive. We cannot issue an advisory opinion simply to "make clear" to the news media that the District Court's order does not entitle them to access any documents beyond those already unsealed. Reply Br. at 4. Similarly, even assuming that resealing the documents would enable Cosby to file the settlement agreement under seal in support of his claim that Constand breached it, he stipulated to dismissal of that claim for lack of subject matter jurisdiction. Though the dismissal was without prejudice, any prospect of relief in that proceeding is entirely an imaginative guess. We therefore conclude that resealing the documents would not provide Cosby with any meaningful relief, and thus this appeal is moot.

## III. WHETHER TO VACATE THE DISTRICT COURT'S ORDER

As this appeal is moot, we cannot review the merits of the District Court's decision to unseal the documents and must decide what course is appropriate. We have equitable discretion to vacate the District Court's order, *Old Bridge Owners Co-op Corp. v. Township of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001), which would prevent its decision from "spawning any legal consequences." *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007) (internal

agreement, Cosby's description of them as "non-parties" is apt. Opp. to Mot. to Dismiss at 8. They did not become parties, as the District Court denied their motion to intervene. *See* Order, ECF No. 128 (Dec. 21, 2015).

quotation marks omitted). As a general rule, "when a case becomes moot pending disposition of an appeal, the judgment below will be vacated." *Old Bridge*, 246 F.3d at 314 (internal quotation marks omitted). This is done out of concern for procedural fairness, namely that parties should not remain bound by a decision that the court of appeals cannot review because it has become moot. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).

The only recognized exception to this rule is when "mootness results from settlement" and thus "the losing party has voluntarily forfeited his legal remedy." *Lightner ex rel. N.L.R.B. v. 1621 Route 22 West Operating Co.*, 729 F.3d 235, 237-38 (3d Cir. 2013) (quoting *Bancorp*, 513 U.S. at 25). Refusing to vacate in those circumstances prevents parties from attempting to "manipulate the [judicial] system" by settling the case in order to vacate an unfavorable decision. *Rendell*, 484 F.3d at 243.

Although the claims of the AP are not settled, it nonetheless contends that Cosby forfeited his right to appeal by failing to make a timely motion to stay the District Court's order. While the Tenth Circuit and the D.C. Circuit have declined to vacate when the losing party has made no attempt whatsoever to seek a stay — *see Mahoney v. Bobbitt*, 113 F.3d 219 (D.C. Cir. 1997); *In re Western Pacific Airlines*, 181 F.3d 1191 (10th Cir. 1999) — that is not what happened here. Cosby's counsel requested a stay within an hour of receiving the District Court's order, and while this proved to be too late to prevent the documents from becoming public, there is certainly no evidence that it was part of any attempt to manipulate the judicial system.

Though we follow the general rule and vacate the District Court's order, we point out that our decision does not express any view on whether the documents should have been

15

unsealed. That question implicates how to balance significant public and private interests, and we leave the problem of striking that balance for another day.[8] Our decision merely recognizes the limits of our own power in this case. The contents of the documents are a matter of public knowledge, and we cannot pretend that we could change that fact by ordering them resealed. We thus vacate the District Court's order and dismiss this appeal as moot.

---

[8] While we are without jurisdiction to review this question, it is worth noting that, if we could review it, we would have serious reservations about the District Court's "public moralist" rationale. It has no basis in our jurisprudence regarding the conditions for modifying a protective order as set forth in *Pansy* and its progeny. Moreover, the term "public moralist" is vague and undefined.