OPINION BY RANSOM, J.:
Appellant, the Associated Press, appeals from the order entered March 10, 2017, denying its motion to unseal docket entries and various documents filed in the five underlying criminal cases in this matter. After careful review, we find that the substance of the documents in question has already been disclosed to the public, and that the proffer letters are not public judicial documents and therefore are not subject to the right of disclosure. Thus, we *470 reverse the trial court's order in part and affirm in part.
We adopt the following statement of facts and procedural history from the trial court opinion and the underlying record. See Trial Court Opinion (TCO), 8/4/17, at 2-5. In 2011, Gerald A. Sandusky, the former defensive coordinator for the Pennsylvania State University ("PSU") football team and founder of a non-profit charity for troubled youth, was arrested. He was charged with forty-nine offenses related to the sexual abuse of ten child victims. As a result of this arrest, a grand jury investigation was conducted into the actions of various university officials.
As an outcome of that investigation, Appellee Graham Spanier was charged with one count of perjury, two counts of endangering the welfare of children, one count of obstruction of justice, three counts of conspiracy, and one count of failure to report suspected child abuse.[1] Appellee Timothy Curley was charged with endangering the welfare of children, obstruction of justice, and criminal conspiracy. Appellee Gary Schultz was charged with endangering the welfare of children, obstruction of justice, and criminal conspiracy. In total, as noted supra , this matter involves five separate criminal dockets. The grand jury presentments were publicly released.
Prior to trial, in November 2013, Appellees filed several motions arguing that attorney-client privilege existed between them and Cynthia Baldwin, a former Justice of the Supreme Court of Pennsylvania, who was serving as the general counsel of PSU. The motions referenced facts that Appellees asserted were privileged, so they requested that the filings be made under seal. The filings were allowed to be made under seal and were listed on the dockets as "Sealed Entr[ies]."
In June 2014, PA Media Group filed a motion to unseal the records; Appellees filed responses in opposition. In January 2015, the trial court issued a memorandum opinion and order disposing of the motion to unseal, as well as the motions to dismiss the charges that resulted from Ms. Baldwin's testimony before the grand jury.
The court found that in all matters related to Appellees' appearances before the grand jury, Ms. Baldwin had represented each defendant in his capacity as an agent of the University conducting university business, not as an individual in his personal capacity. In so finding, the court determined that Appellees had not been denied their right to counsel and also that Ms. Baldwin had not violated attorney-client privilege. Nevertheless, due to the sensitivity of the privilege issue, the memorandum opinion on the open docket cited only evidence in the open record, and additional sealed memorandums addressed the sealed evidence.
Appellees timely filed an interlocutory appeal under seal. In January 2016, a panel of this Court reversed the orders, finding that the communications regarding subpoenas between Ms. Baldwin and Appellees were protected by attorney-client privilege. See Commonwealth v. Curley , 131 A.3d 994, 1006-07 (Pa. Super. 2016) ; Commonwealth v. Schultz , 133 A.3d 294, 324-28 (Pa. Super. 2016) ; Commonwealth v. Spanier , 132 A.3d 481, 498 (Pa. Super. 2016). Thus, the panel determined that Ms. Baldwin was an incompetent witness to testify regarding the perjury and obstruction charges. Id. Accordingly, the panel quashed all charges that arose from the violation of privilege. Id. In issuing its opinion, the panel unsealed select portions *471 of the notes of testimony.[2]
In May 2016, the Associated Press ("AP") and ALM Media LLC ("ALM") filed a motion to intervene and unseal filings on the five dockets connected to this matter. They represented that the Commonwealth and Appellees Curley and Schultz agreed that consideration of the motion required document by document review and represented that counsel for Appellee Spanier concurred in the motion except as to the transcript of a closed hearing and sealed opinion relating to attorney-client privilege. The court granted the motion to intervene and directed Appellees to file responses to the request. Pending disposition of the motion to unseal, the record was to remain sealed.
In September 2016, the trial court conducted a conference regarding the motion. If the court would not unseal the records fully, Appellant proposed that, in the alternative, the court should unseal the titles of filings listed as sealed entries but keep the contents of the filings sealed. Appellees submitted letters to the court, detailing their respective positions. The Commonwealth did not object to the motion to unseal, except as to grand jury filings that had not been previously unsealed by the supervising judge of the statewide investigating grand jury. The trial court conducted a file-by-file examination of the documents and docket entries at issue.
On March 6, 2017, the court granted the motion in part and denied it in part, unsealing numerous filings at each docket, but denying most of Appellant's motion to unseal the documents. It did not issue individualized findings for any record but instead stated that it found "such filings are not subject to right of public access to judicial proceedings because they relate to proffers to the court and claims of attorney-client privileged information." See Order, 3/10/17, at 5. The order also stated that the court had conducted a document-by-document review of the record and sealed additional documents and docket entries that the parties had not requested sealed based upon the same reason. Id.
Appellant timely appealed.[3] Both Appellant and the trial court have complied with Pa.R.A.P. 1925(b).[4]
On appeal, Appellant raises the following issues for our review:
1. Whether the trial court abused its discretion in ruling that dozens of records from the underlying proceedings should remain sealed based on the attorney-client privilege where (a) the parties themselves did not seek to maintain the seal over most of the records at issue, (b) the substance of the information subject to the privilege had already been disclosed publicly, (c) the trial court failed to make findings as to why the *472 public's right to access those records was overcome on a document-by-document basis, and (d) the trial court made no effort to narrowly tailor its sealing order only to the extent necessary to protect the interests allegedly served by sealing?
2. Whether the trial court erred in ruling that evidentiary proffers to the court were not subject to a right of access under either the First Amendment or the common law?
3. Whether the trial court abused its discretion in ruling that the docket entries corresponding to sealed filings should remain under seal where (a) no party to the proceeding opposed the unsealing of the docket entries, and (b) the only rationale articulated for maintaining the seal was that unsealing the docket entries was infeasible under the court's existing technology, but there existed reasonable alternative methods to make that information public.
Appellant's Brief at 2-3 (unnecessary capitalization omitted and answers omitted).
The issues here concern 1) whether there is a right of public access to documents filed in this case and 2) whether documents filed in this case are protected by attorney-client privilege, such that they should remain sealed despite that right. Initially, we note that
[t]he threshold consideration of whether there exists a common law or constitutional right of public access to a judicial proceeding raises a pure question of law. Our standard of review, therefore, is de novo , and our scope of review is plenary.
Selenski , 996 A.2d at 496 (internal citations and quotations omitted). In the matter of the majority of the documents at issue here, there is no question that they were subject to the right of public access; the question is whether the attorney-client privilege is sufficient to defeat that right. Similarly, "[w]hether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." Brown v. Greyhound Lines, Inc. , 142 A.3d 1, 8 (Pa. Super. 2016). Accordingly, our standard of review is de novo , and our scope is plenary. Id.
In its first issue, Appellant contends the court erred in ruling that records from the underlying proceedings should remain sealed based upon attorney-client privilege. See Appellant's Brief at 17. Appellant advances four arguments in support of this claim: 1) the parties themselves did not seek to maintain the seal; 2) the substance of the information subject to privilege had already been disclosed publicly; 3) the trial court did not make findings as to why the public's right to access those records was overcome on a document-by-document basis; and 4) the trial court did not narrowly tailor its order, i.e. , sealing documents only to the extent necessary to protect the interests served by the sealing. See Appellant's Brief at 17-29.
With regard to the right of public access to criminal proceedings, we note that
[i]t is well settled that the First Amendment to the United States Constitution, and Article I, Sections 7 and 11 of the Pennsylvania Constitution secure a general right of public access to criminal proceedings, as well as to judicial records.
Id. at 496-97 (some internal citations and quotations omitted).
With regard to the common law right of access, our state and federal courts have recognized the right of the public to inspect judicial records. This right preceded the constitution and has been justified on the grounds of both the public's right to know and the public's right to open courts. See *473 Commonwealth v. Fenstermaker , 515 Pa. 501, 530 A.2d 414, 418 (1987) ; see also United States v. Criden , 648 F.2d 814, 819 (3d Cir. 1981).
The threshold inquiry in a case invoking the common law right of access is whether the documents sought to be disclosed constitute public judicial documents. Furthermore, there is a presumption-however gauged-in favor of public access to judicial records. Documents that are filed with the court and, in particular, those that are used by the judge in rendering a decision are clearly considered public judicial documents. [ Fenstermaker , 530 A.2d at 418 ] (probable cause affidavits filed with the magistrates and used by them when deciding whether to issue arrest warrants are judicial records). Conversely, documents that are not public judicial documents include transcripts of bench conferences held in camera and working notes maintained by the prosecutor and defense counsel at trial.
Commonwealth v. Long , 592 Pa. 42, 922 A.2d 892, 898 (2007) (some internal citations and quotations omitted) (citing Fenstermaker , 530 A.2d at 418 ).
Docket entries and other filings in a criminal proceeding are public records. See , e.g. , Commonwealth v. Upshur , 592 Pa. 273, 924 A.2d 642, 648 (2007) (plurality ) (citing in support Fenstermaker , 530 A.2d at 419 ). In the instant case the trial court agreed with Appellant that the records are subject to both the First Amendment and common law rights of access, but sealed the records because the documents, with the exception of witness proffers which had not been filed, referenced matters that were privileged attorney-client communications.[5] See Trial Court Opinion (TCO), 8/4/17, at 6-7.
Our state and federal courts provide additional guidance as to the standards the trial court should consider when closing criminal proceedings or records. Regarding the constitutional right of access, at least, the court should issue individualized, specific, particularized findings on the record that closure is essential to preserve higher values and is narrowly tailored to that interest. See United States v. Antar , 38 F.3d 1348, 1359 (3d Cir. 1994) (quoting Press-Enter. Co. v. Superior Court of California for Riverside Cty. , 478 U.S. 1, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) (" Press-Enterprise II ") ); see also Long , 922 A.2d at 905-906 (noting that the court should make particularized findings explaining why the specific information should remain under seal).
Here, the trial court did not issue document-by-document findings. Instead, as noted supra , it issued a blanket conclusion that
It is not for this [c]ourt to waive a privilege which [Appellees] maintain. The privilege which the Superior Court deemed to exist remains through the disposition of the case and beyond, irrespective of the timing of [Appellant's] request to obtain such information ... We found that numerous filings, even those not noted by Counsel, must remain under seal as they contained citation to privileged evidence or reference to related filings. We unsealed documents which did not risk disclosure of attorney-client privileged information.
See TCO at 7-8.[6] While ultimately, as will be discussed infra , the court's lack of specific findings is a moot issue, we note with disapproval the hindrance to our review that has resulted from this failure.
*474 Initially, we observe that while the court's March 6, 2017, order lists with specificity the documents it unseals , it does not identify the documents that remain sealed beyond pointing to the docket entries. Moreover, there are discrepancies between various docketing statements in the case, and individual entries. For instance, the court unsealed Appellee Curley's "Memorandum of Law in Opposition to Motion to Quash Subpoena" at one docket, CP-22-CR-0005165-2011, but it remains sealed on another docket, CP-22-CR-0003614-2013.[7] Similarly, the court unsealed an order directing Appellees to file responses to a motion under seal at 5165-2011, but it remains sealed on 3614-2013. Further, the certified record consists of three large boxes and numerous sealed documents, including some documents that appear to be in sealed envelopes, despite an order unsealing them. Due to the nature of the sealed record, it is impossible for Appellant to catalogue and preserve these issues.
All of these factors have made it difficult for this Court to ascertain the exact documents that were intended to be sealed and which were intended to be unsealed. Although individualized findings may have reached the same conclusion-that each document either referenced or summarized privileged evidence-a list of sealed documents would have greatly assisted this Court in its review. The trial court, in failing to make individualized findings, erred. See Antar , 38 F.3d at 1359 ; Long , 922 A.2d at 905-06.
Nevertheless, despite the deficiencies of the trial court's opinion, the issue is moot. Appellant contends that the information is no longer protected from disclosure, as the substance has long since been made public. See Appellant's Brief at 24-25. Appellee Spanier responds he has always maintained his claim of attorney-client privilege, and that the trial court correctly concluded that the remaining sealed documents contained "privileged communications not yet disclosed." See Appellee Spanier's Brief at 3-4. Appellee Curley also contends that he has not waived his privilege, and that the list of documents he identified which should remained sealed is separate and distinct from the grand jury testimony referenced in the public presentment.[8] See Appellee Curley's Brief at 11. The Commonwealth represents to this Court that all of the disputed items in the matter were previously unsealed for Grand Jury purposes by the supervising judge of the Grand Jury, and accordingly, takes no position on the appeal.[9] See Letter, 10/11/17, at 1-2.
With regard to requests to seal matters already in the public domain, our Supreme Court has concluded that where the petitioners fail to demonstrate how the pleadings *475 implicate the secrecy of the Grand Jury, sealing is inappropriate.[10] See In re: Dauphin County Fourth Investigating Grand Jury , 596 Pa. 378, 943 A.2d 929, 939 (2007). The Third Circuit has dismissed as moot an appeal from an order unsealing a confidential settlement agreement. See Constand v. Cosby , 833 F.3d 405, 409-12 (3d Cir. 2016). There, the appellant argued that resealing the documents would slow their dissemination and prevent the clerk of the court from providing official version of the documents on request. Id. at 409-10. Nevertheless, the Court noted that appeals "seeking to restrain further dissemination of publicly disclosed information are moot." Id. at 410 (internal citations and quotations omitted). The Court also noted that "[w]e simply do not have the power, even if we were of the mind to use it if we had, to make what has thus become public private again." Id. (quoting Gambale v. Deutsche Bank AG , 377 F.3d 133, 144 (2d Cir. 2004) ).
Here, similarly, the specific details and much of the substance of the information has already been disclosed, though at times that disclosure has been compelled against the Appellees' objections. The Second Grand Jury Presentment is to this day publicly available, and, as the Commonwealth and Appellant have recognized, contains summaries of Ms. Baldwin's Grand Jury testimony, specifically, her disclosure of privileged information. See Grand Jury Presentment, 11/1/12, at 24-25. The information was further disclosed in this Court's prior opinions on the interlocutory appeal in this matter. See , e.g. , Spanier , supra ; Curley , supra ; and Schultz , supra . Specifically, the opinions quoted or summarized large portions of grand jury testimony in which Ms. Baldwin testified regarding conversations she had had with Appellees Spanier, Curley, and Schultz prior to their testimony before the Grand Jury. See Spanier , 132 A.3d at 488-90 ; Curley , 131 A.3d at 1000-01 ; Schultz , 133 A.3d at 301-04. During the pendency of these proceedings, the media has reported extensively on the matter.[11]
Many of the documents which Appellees sought to keep under seal are concerned with Ms. Baldwin's testimony. Although the record in the instant case is sealed, and although Appellees claim that the remaining sealed documents "contained privileged communications not yet disclosed," they have not identified how the contents of the documents differ from the testimony and evidence already released. As case law indicates, once evidence has been disseminated to the general public, it cannot be resealed; the cat is out of the bag, so to speak. See , e.g. , In re: Dauphin County Fourth Investigating Grand Jury , 943 A.2d at 939 ; Constand , 833 F.3d at 409-12.
Nevertheless, we will address whether Appellees may still claim attorney-client *476 privilege as a reason to evade unsealing. Appellee Spanier cites, generally, to case law suggesting that attorney-client privilege constitutes a compelling basis to deny Appellant's request to unseal the records. See Appellee Spanier's Brief at 3 (citing Gillard v. AIG Ins. Co. , 609 Pa. 65, 15 A.3d 44, 47 n.1 (2011) ; Lugosch v. Pyramid Co. , 435 F.3d 110, 125 (2d Cir. 2006) ). Appellee Curley cites no case law in support of his proposition, rather he relies upon the trial court's opinion, which cites generally to Gillard and Nationwide Mutual Insurance Company v. Fleming , 924 A.2d 1259 (Pa. Super. 2007). See Appellee Curley's Brief at 12.
We must further examine the meaning of that privilege and the purpose behind it. By statute,
[i]n a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.
42 Pa.C.S. § 5916.
In addition to the above statute, "[t]he attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P. , 108 A.3d 54, 60 (Pa. Super. 2015) (internal citations and quotations omitted).
Further,
[o]ur Supreme Court has explained that the purpose of the privilege
is to encourage clients to provide information freely to their attorneys to allow the attorney to give sound and informed advice to guide their clients' actions in accordance with the law. As the privilege encourages clients to speak openly with their counsel, we recognize that in many cases, [t]he privileged communications kept from the court do not really represent a loss of evidence since the client would not have written or uttered the words absent the safeguards of the attorney-client privilege. We are further cognizant that to attain the privilege's goals, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege ... is little better than no privilege at all.
Levy v. Senate of Pennsylvania, 619 Pa. 586, 65 A.3d 361, 371 (2013).
Our Supreme Court has noted "the ongoing tension between the two strong, competing interests-of-justice factors in play-namely-the encouragement of trust and candid communication between lawyers and their clients, and the accessibility of material evidence to further the truth-determining process." Gillard v. AIG Ins. Co., 609 Pa. 65, 15 A.3d 44, 57 (2011). Regarding the latter interest, our Supreme Court has explained as follows.
[E]videntiary privileges are not favored. [E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth. Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.
Commonwealth v. Stewart, 547 Pa. 277, 690 A.2d 195, 197 (1997).
"The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial *477 judge may require that the communication be disclosed." Cohen v. Jenkintown Cab Co., 238 Pa.Super. 456, 357 A.2d 689, 693-94 (1976) (en banc ). For example, there is an exception to the privilege where "the client has attacked the integrity and professionalism of counsel." Salsman v. Brown, 51 A.3d 892, 895 (Pa. Super. 2012). Similarly, "if the legal advice sought from counsel is for the purpose of committing a crime, the attorney-client privilege does not apply." In re Thirty-Third Statewide Investigating Grand Jury, 624 Pa. 361, 86 A.3d 204, 217 (2014).
Conversely, if the private good of protection from the harm that could come with disclosure of attorney-client communications is not furthered by application of the privilege, it is inapplicable:
It is for the protection and security of clients that their attorneys at law or counsel are restrained from giving evidence of what they have had communicated and intrusted to them in that character; so that legal advice may be had at any time by every man who wishes it in regard to his case, whether it be bad or good, favorable or unfavorable to him, without the risk of being rendered liable to loss in any way, or to punishment, by means of what he may have disclosed or intrusted to his counsel. But where it is impossible, that the rights or the interests of the client can be affected by the witness's giving evidence of what came to his knowledge by his having been counsel and acted at the time as attorney or counsel at law, the rule has no application whatever, because the reason of it does not exist.
Cohen, 357 A.2d at 692 (quoting Hamilton v. Neel, 7 Watts 517, 521 (Pa. 1838) ).
Red Vision Sys., Inc., 108 A.3d at 61-62 (some internal citations and quotations omitted).
Thus, in summary, the privilege exists to aid the administration of justice, and, more specifically, to balance competing interests of justice. Cohen , 357 A.2d at 693-94 ; Gillard , 15 A.3d at 57. Clients should have the access to the best representation possible, which may be accomplished with privilege, but we must also allow for the accessibility of material evidence to further the truth-determining process. Levy, 65 A.3d at 371 ; Gillard , 15 A.3d at 57. In the instant situation, we likewise consider the balance of these interests. Appellees, as the clients of Ms. Baldwin, had an interest in receiving the best possible representation from her by being able to communicate freely and openly. They have asserted their privilege since the commencement of the indictments against them, and indeed, this Court has recognized they were entitled to that privilege and dismissed all charges stemming from Ms. Baldwin's Grand Jury testimony. See Curley , 131 A.3d at 1006-07 ; Schultz , 133 A.3d at 324-28 ; Spanier , 132 A.3d at 498.
However, the information has been disclosed regardless. As noted above, once released it cannot be resealed. See , e.g. , In re: Dauphin County Fourth Investigating Grand Jury , 943 A.2d at 939 ; Constand , 833 F.3d at 409-12. Thus, the question remains: what is the just result in a matter where Appellees are entitled to attorney-client privilege, but the information has been disclosed against their request? A just result of a violation of attorney-client privilege is to quash the charges stemming from that violation; our Court has already done so. See Curley , 131 A.3d at 1006-07 ; Schultz , 133 A.3d at 324-28 ; Spanier , 132 A.3d at 498. There is no remaining remedy to which Appellees are entitled, and no further justice that may be served by attempting to reseal documents *478 whose substance has been public for years. See , e.g. , In re: Dauphin County Fourth Investigating Grand Jury , 943 A.2d at 939 ; Constand , 833 F.3d at 409-12.
Accordingly, we vacate the portion of the trial court's order as it relates to the non-proffer documents, and direct the court to unseal the remaining documents and corresponding docket entries. Id. We also note that, due to this holding, Appellant's third issue-that the docket entries should be unsealed, or at the very least, provided to Appellant in some other fashion-is rendered moot.
Next, Appellant contends that the court erred in ruling evidentiary proffers regarding testimony that would be given at an in camera hearing were not subject to a right of access either under the First Amendment or the common law. See Appellant's Brief at 30. Appellant claims that although it does not know the exact content of the proffer letters, it appears that the trial court ultimately determined that the evidence was admissible.
As opposed to its tacit agreement that docket entries and filings are public judicial documents, the trial court seems to reason that the proffer letters are not public judicial documents and, accordingly, are not subject to the right of access. The trial court observes solely that our Courts have "noted that not all writings connected with judicial proceedings including transcripts of bench conferences, constitute public judicial documents," citing in support Fenstermaker , supra .
As discussed above, Fenstermaker noted that the threshold inquiry into the common law right of access is whether the documents are public. Id. at 418. The Supreme Court of Pennsylvania observed that some documents are not public, including transcripts of in camera hearings, working notes from counsel on both sides of the bench, and gave other examples of non-public writings. Id. However, in deciding whether arrest warrants were public, it noted that
documents upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character, for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavits and the information contained therein provide a sufficient basis on which to justify an arrest.
Fenstermaker , 530 A.2d at 418 ; but see P.G. Pub. Co. v. Com. By & Through Dist. Atty. Of Erie Cty. , 389 Pa.Super. 86, 566 A.2d 857, 859-61 (1989) (declining to extend Fenstermaker's holding to search warrants in an in-progress investigation). This case implies that in many cases, where a document is filed with the court, this increases the presumption of its public nature. Id. This is particularly true where, as in the case of an arrest warrant, it will become part of the permanent record. Id. ; accord Commonwealth v. Crawford , 789 A.2d 266, 270-71 (Pa. Super. 2001) (finding Commonwealth's pretrial brief was not a public judicial document where it was not filed of record).
Here, there appears to be some confusion regarding whether or not the proffer letters are actually contained within the certified record. Prior to hearings, counsel for Appellees submitted to the court by email and first class mail various proffer letters. See N.T., 12/16/13, at 28-31. At a December 2013, in camera hearing, the court issued contradictory remarks about whether the letters would be made part of the record. Id. at 28-31, 52-54, 55-59, 78, 110. No further order was issued or docketed regarding the admission of the proffers to the record. The next day, the court indicated that the information in the letters was already put in the record during the proceedings and that was "the record that we're sticking with." See N.T., 12/17/13, at 6. The court then indicated it would make a decision without any of that proffered testimony. Id. at 7.
*479 Despite motions for clarification filed by counsel for Appellees, the proffer letters were never docketed, and it does not appear that the trial court considered them filed. See Order, 3/10/17, at 2 (indicating that "undocketed written proffers and attachments thereto submitted to the court for in camera consideration" should remain sealed). Accordingly, because the proffers were never docketed, formally filed with the court, or required by any rule of criminal procedure, they are not considered "public judicial documents" subject to the right of First Amendment or common law access. See Fenstermaker , 530 A.2d at 418 ; see also Crawford , 789 A.2d at 270-71.
Thus, we affirm the portion of the trial court's order as it denies the motion to unseal any written proffer letters.
Order affirmed in part and reversed in part. Remanded for the trial court to unseal the records as ordered. Jurisdiction relinquished.

18 Pa.C.S. §§ 4902, 4304, 6319, 903, and 6319, respectively.

Specifically, see Order, 1/22/16, at 299 MDA 2015; see also Notes of Testimony (N.T.), 11/20/14, at 93, lines 10-25, 94, lines 1-24.

"It is well settled that an order that denies a request for public access to a criminal proceeding or judicial documents constitutes a collateral order from which an immediate appeal may be taken." Commonwealth v. Selenski , 996 A.2d 494, 495 n.2 (Pa. Super. 2010) (internal citations and quotations omitted); see also Pa.R.A.P. 313.

Additionally, we note that on March 24, 2017, a jury convicted Appellee Spanier of one count of endangering the welfare of children, graded as a misdemeanor of the first degree; his appeal is docketed at 1093 MDA 2017. On June 2, 2017, Appellee Curley entered a negotiated plea to one count of endangering the welfare of children, graded as a misdemeanor of the first degree. That same day, Appellee Schultz entered a negotiated guilty plea to one count of endangering the welfare of children, graded as a misdemeanor of the first degree. Neither Curley nor Schultz have appealed their sentences.

The court also kept the proffers sealed, but for a different reason that we will discuss further infra .

Slightly over 209 entries remain sealed.

There appears to be an error in the court's order. The court refers to Appellee Curley's docket entries as CP-22-CR-0005164-2011 and CP-22-CR-0003164-2013. However, 5164 refers to Appellee Schultz; CP-22-CR-0005165-2011 is Appellee Curley's first docket.

Interestingly, in Appellee Curley's letter to the trial court regarding his requests for continued sealing, he admitted that "by virtue of the publication of the second presentment against these defendants, the content of that testimony became public ... Mr. Curley recognizes that the sealing of this volume of pleadings may not be [feasible] and it may be moot, as the information was already released by the prosecution through the presentment, and Ms. Baldwin's testimony has already been circulated by the media. Nevertheless, Mr. Curley continues to assert the privilege regarding all aspects of Ms. Baldwin's representation of him ..." See Letter to Senior Judge John A. Boccabella, 10/13/16, at 4.

Appellee Schultz has not filed a brief in this matter.

The opinion does not discuss in depth the reasoning for this decision; the holding is one line in the conclusion of the opinion addressing an additional motion filed by petitioners that had not been addressed in the main body of the opinion. See In re Dauphin County Fourth Investigating Grand Jury , 943 A.2d at 939.

Appellant cites to a number of these articles in its brief. See Appellant's Brief at 7 (Genaro Armas, Geoff Mulvihill & Mark Scolforo, Jerry Sandusky report: Penn State could have stopped abuse in '98 , Associated Press (July 12, 2012); Michael Sokolove, The Trials of Graham Spanier, Penn State's Ousted President , N.Y. Times Magazine (July 16, 2014); Susan Snyder & Craig McCoy, Ruling reverses charges against Spanier, others in Sandusky case , Philadelphia Inquirer (Jan. 24, 2016); Matt Miller, Judge slams Paterno, McQueary as he sends Spanier, Curley and Schultz to jail over Sandusky child-sex case , PennLive (June 2, 2017); Joe Mandak, Penn State administrators Curley and Schultz report to jail , Associated Press (July 15, 2017) ).