J-A24042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NICOLE EVA GROSS O/B/O I.M., J.M., J.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1120 EDA 2023 |
| JARED ZALMAN MINTZ | : | |

Appeal from the Order Entered April 21, 2023
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2023-01572

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                 **FILED FEBRUARY 08, 2024**

Nicole Eva Gross ("Mother"), on behalf of her three children, I.M., J.M. ("Ju.M."), and J.M. (collectively, "the children"), appeals from the order denying her requests for a transcript of Ju.M.'s *in camera* interview at a protection from abuse ("PFA") hearing. Mother has also filed applications requesting that this Court make the transcript available to her. We dismiss this appeal and all outstanding applications as moot.

The procedural background relevant to our decision is as follows.[1] In January 2023, Mother filed on behalf of the children a PFA petition against her

---

[1] The parties are well known to this Court. **See Gross v. Mintz**, 285 A.3d 934, 2022 WL 4242456 (Pa. Super. 2022) (unpublished memorandum) (affirming the denial of Mother's October 2021 PFA petition), *appeal denied*, 293 A.3d 562 (Pa. 2023); **see also Gross v. Mintz**, 284 A.3d 479 (Pa. Super. 2022) (affirming the grant of Father's petition for contempt and the imposition of a requirement that Mother obtain court approval before filing PFA petitions
*(Footnote Continued Next Page)*

former husband and the children's father, Jared Zalman Mintz ("Father"), making various allegations not relevant here. **See** PFA Petition, 1/27/23.

The trial court appointed a child advocate for the children, issued a temporary PFA order, and convened a hearing on February 3, 2023 ("the PFA hearing"). The trial court granted Father's motion *in limine* and stated that it was only considering evidence of acts after October 2021 to determine the children's imminent fear of bodily injury. **See** N.T., 2/3/23, at 22-23. During her testimony, Mother asserted that Father had recently taken, posted, or emailed sexually exploitative photographs or videos of the children's genitalia.[2] **See id**. at 35-44, 69-73. The court did not receive any

_____

that interfered with Father's custodial rights), *appeal denied*, 293 A.3d 563 (Pa. 2023).

Mother has taken other appeals related to the same facts in the instant appeal. **See** 2157 EDA 2023 (quashed appeal from an order striking an affidavit), *petition for allowance of appeal filed*, 593 MAL 2023. Additionally, it appears that Mother filed another PFA petition in May 2023 and appealed from the dismissal of that petition. **See** 1735 EDA 2023 (pending appeal). She has also appealed numerous preliminary orders in a custody proceeding. **See** 743 EDA 2023 (quashed appeal from an order for a mental evaluation); 1082 EDA 2023 (quashed appeal from an order for a mental evaluation); 1506 EDA 2023 (quashed appeal from an order denying recusal); 1755 EDA 2023 (quashed appeal from an interlocutory order granting Father's motion); 1995 EDA 2023 (discontinued appeal); 2015 EDA 2023 (quashed appeal from a pre-hearing order on evidence and mode of presentation); 2016 EDA 2023 (quashed appeal from pre-hearing order on evidence and mode of presentation; sanctions imposed); 2411 EDA 2023 (quashed appeal from an order denying Mother's proffer of photographs; sanctions imposed); 109 EDM 2023 (denial of a petition to stay).

[2] Father objected and asserted that Mother was discussing pictures taken when the children were babies and that those allegations had been the subject of prior investigations and prior PFA petitions. **See** N.T., 2/3/23, at 70.

photographs into evidence. Ju.M. was present at the PFA hearing, and she had a prepared, written statement for the court. *See id*. at 74-75. The court, without objections from Mother's and Father's counsel, elected to interview Ju.M. *in camera*, with the child advocate present. *See id*. at 75-77. Neither Mother's nor Father's counsel requested to be present during the Ju.M.'s *in camera* interview, although the court had the child advocate attend and permitted Ju.M.'s grandmother to be present for Ju.M.'s comfort. *See id*.; *see also In Camera* Interview of Ju.M., 2/3/23, at 2. At the conclusion of the *in camera* interview, the trial court summarized Ju.M.'s testimony on the record. *See* N.T., 2/3/23, at 77-79. The court thereafter vacated the temporary PFA order and denied Mother's request for a final PFA order ("the February 3, 2023 PFA order"). Mother did not appeal the February 3, 2023 PFA order within thirty days, and the denial of her PFA petition became final on March 6, 2023.

After the February 3, 2023 PFA order became final, Father filed petitions to expunge the records related to Mother's PFA petitions. Mother requested the transcript of the entire PFA hearing, but no formal requests appear in the record. *See* Pa.R.J.A. 4007(A)-(B) (requiring all requests for transcripts be set forth on a standard form and filed and served). The next relevant docket entries indicate that a transcript of the PFA hearing had been filed and that the court entered an April 4, 2023 order directing that the transcript of Ju.M.'s *in camera* interview be sealed ("the sealing order").

Mother then filed a "Motion to Release Child Survivor *In Camera* Testimony," asserting, in relevant part, that she had requested a transcript of the PFA hearing, but the materials she received did not include a transcript of Ju.M.'s *in camera* interview. **See** Motion to Release, 4/17/23, at 1-2. Mother claimed the trial court was improperly withholding the transcript of Ju.M.'s *in camera* interview and violating her due process rights. **See id**. at 2-3. Mother averred she needed the transcript of Ju.M.'s *in camera* interview due to a new and active abuse investigation of Father and because Father commenced a custody proceeding in which he claimed Mother engaged in parental alienation. **See id**. at 2-4. Father opposed Mother's motion to release the transcript of Ju.M.'s *in camera* interview and requested sanctions. Mother then filed a motion for expedited release of the transcript of Ju.M.'s *in camera* interview to use at a deposition of Father in the custody proceeding. **See** Expedited Motion for Release, 4/21/23, at 1-2.

On April 21, 2023, the trial court denied Mother's motions for the release of the transcript of Ju.M.'s *in camera* interview. On April 28, 2023, Mother appealed the April 21, 2023 order and contemporaneously filed a Pa.R.A.P. 1925(b) statement.[3] The trial court authored a Rule 1925(a) opinion.

---

[3] Mother also filed a *nunc pro tunc* notice of appeal from the February 3, 2023 PFA order denying her PFA petition. This Court quashed that appeal. **See** 1121 EDA 2023. Mother later filed a motion for the trial judge to recuse and separately appealed an order related to the denial of that motion. This Court quashed that appeal. **See** 1507 EDA 2023.

While this appeal was pending, Father filed an application to quash the appeal, which this Court denied by a *per curiam* order. **See** Order, 6/2/23 (citing Pa.R.J.A. 4007(E), which governs waivers or adjustments of the costs of transcription). The trial court's prothonotary then electronically transmitted the certified record to this Court. Despite the trial court's sealing order, and its Rule 1925(a) opinion stating that the transcript of Ju.M.'s *in camera* interview remained sealed, **see** Trial Court Opinion, 6/9/23, at 8, the trial court's prothonotary apparently transmitted the sealed transcript, along with the remaining unsealed transcript of the PFA hearing, in a single, unsealed "transcripts of testimony" file. The transcript of Ju.M.'s *in camera* interview thus became available to a party who accessed the "transcripts of testimony" file on this Court's electronic case management system. Mother's counsel accessed the "transcripts of testimony" file on June 10, 23, and 29, 2023, and downloaded a copy of all transcripts, including Ju.M.'s *in camera* interview.[4]

Between June and August 2023, Mother also filed in this Court applications for relief and correction of the record. Therein, Mother asserted, incorrectly, that she did not have access to the transcript of Ju.M.'s *in camera* interview. **See** Application for Relief, 8/4/23, unnumbered at 1-2; Application for Relief, 6/29/23, unnumbered at 1-2. Despite these averments, Mother

_____

[4] We take this opportunity to remind the trial court and the clerk of courts to take special care to develop a procedure/process to protect sealed portions of the record. It is a better practice for the courts to seal records in an original, non-electronic format, and for the prothonotary of the trial court to transmit sealed materials in a printed form, and separately from the electronic record.

subsequently made the transcript of Ju.M.'s *in camera* interview part of the reproduced record, which she filed with an appellant's brief that raised the following issues:

1. Whether the trial court erred as a matter of law and committed an abuse of discretion in entering the April 21, 2023 order . . ., refus[ing] to release the *in camera* testimony and plac[ing] it under seal two (2) months after the hearing after the court denied several requests . . . made by Mother . . ..

2. Whether the trial court erred as a matter of law and committed an abuse of discretion in entering the April 21, 2023 order in that the judge wrongly conflated the waiver of being present during an *in[ ]camera* interview with waiving the rights to receive a copy of the transcript in violation of federal and state victims['] rights and due process rights, and in protection from abuse under the law.

Mother's Brief at 6 (some capitalization omitted).

At oral arguments in this matter, Father's counsel alerted this Court to the fact that Mother had included the transcript of Ju.M.'s *in camera* interview in the reproduced record. This Court questioned Mother's counsel concerning his access to, and possession of, the transcript of Ju.M.'s *in camera* interview. Mother's counsel asserted he had been unaware that the "transcripts of testimony" file, which he accessed, downloaded, printed, and included in the reproduced record, contained the transcript of Ju.M.'s *in camera* interview that was the subject of Mother's appeal and applications to this Court. Mother's counsel agreed when the panel suggested that this appeal could be moot.

Both Father's and Mother's counsel have filed post-submission communications. Father's counsel challenged Mother's counsel's statements at oral arguments. *See* Father's Counsel's Letter, 11/7/23, at 1. Mother's

counsel maintained his position he inadvertently obtained the transcript of Ju.M.'s *in camera* interview, although he failed to clarify when he learned that he had possession of the sealed transcript. **See** Mother's Counsel's Letter, 11/10/23, at 2-3. Additionally, Mother's counsel quoted and attached the transcript of Ju.M.'s *in camera* interview to his letter to assert that the trial court should have granted Mother's PFA petition and that the trial judge should recuse. **See id**. at 1-2. Father's counsel, in reply, criticized Mother's counsel for attempting to revive an appeal from the PFA order, using materials that had been sealed, omitting any reference to his concession that this appeal could be moot, and for proceeding with this appeal to obtain a document he had already received. **See** Father's Counsel's Letter, 11/10/23, at 1. Father's counsel, however, did not request any remedial measures or sanctions, **see id**. Neither party identified any risk to Ju.M., the children, or possible prejudice resulting from the disclosure of the transcript of Ju.M.'s *in camera* interview.

Before addressing the merits of Mother's issues, we consider whether a justiciable controversy remains, where Mother has obtained a copy of the disputed transcript of Ju.M.'s *in camera* interview. As this Court has stated:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

We may address mootness *sua sponte*, as we generally cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given.

***M.B.S. v. W.E.***, 232 A.3d 922, 927 (Pa. Super. 2020) (internal citations, quotation marks, and indentation omitted).

We acknowledge that the disclosure of the transcript of Ju.M.'s *in camera* interview appears to be inadvertent and the result of a breakdown in the transmission of the record to this Court. We further recognize that Mother's counsel's failure to disclose his receipt and subsequent use of the transcript of Ju.M.'s *in camera* interview raise potential questions concerning counsel's ethical and professional responsibilities.[5] However, it is clear that Mother has obtained the transcript of Ju.M.'s *in camera* interview and all parties are now aware of the contents of the disputed transcript.[6] Father has not sought remedial measures to restrict access and use of the transcript, nor would this Court be in a position to address the factual and ethical issues necessary to resolve such questions. Thus, we conclude that the proverbial

_____

[5] ***See*** Pa.R.P.C. 4.4(b) (stating that "[a] lawyer who receives a document, including electronically stored information, relating to the representation of the lawyer's client and knows or reasonably should know that the document, including electronically stored information, was inadvertently sent shall promptly notify the sender"); Pa.R.P.C. 3.3 (articulating duty of candor toward the tribunal).

[6] As noted above, in her post-submission communication to this Court, Mother has attached a copy of the transcript of Ju.M.'s *in camera* interview and asserts that the trial court should have granted her PFA petition and the trial judge should recuse. These assertions fall well beyond the scope of reviewing the merits of that April 21, 2023 order.

cat is out of the bag and this appeal is moot. *See **Commonwealth v. Curley***, 189 A.3d 467, 475 (Pa. Super. 2018).[7]

Thus, we dismiss this appeal and all outstanding petitions before this Court as moot.

Appeal dismissed as moot. All outstanding petitions dismissed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/8/2024

---

[7] We add that we perceive no basis to apply any of the exceptions to the mootness doctrine—*i.e.*, "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court" apply. *See **In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002). Mother's right to the transcript of Ju.M.'s transcript is not an issue of great public importance; the question presented is not one capable of repetition and apt to elude appellate review; and, unlike ***D.A.***, neither party will suffer a detriment due to the trial court's ruling. *See id*. at 617 (concluding that a dependency finding was not moot when the trial court had closed the dependency matter, but the mother could suffer a detriment based on the court's initial finding of dependency).