# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milton Hershey School,       :
                  Petitioner    :    **CASE SEALED**
                                  :
          v.                :    No. 665 C.D. 2019
                                  :    Heard: January 10, 2020
Pennsylvania Human Relations    :
Commission,                          :
                  Respondent    :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: February 11, 2020**

Before the Court is an Application to Intervene and Unseal filed by The Philadelphia Inquirer, PBC (The Inquirer), seeking to intervene in the above-captioned matter for the sole purpose of having the docket sheet and other judicial records unsealed (Application). The Milton Hershey School (MHS or School), the Pennsylvania Human Relations Commission (Commission), and Complainant, who intervened in the above-captioned matter, filed responses setting forth their respective positions. Also before the Court is Complainant's Application for Leave to Respond to MHS's Brief (Application to Respond) and MHS's Application for Leave to Submit Sealed Documents for *In Camera* Review (Application to Submit Documents), to which The Inquirer filed an Answer objecting. Oral argument was held before the Court on the Application on January 10, 2020, in which The Inquirer, the Commission, and MHS participated.

## I.    Background

Before addressing the current applications, it is helpful to understand the unique procedural background of this matter. During ongoing proceedings before the Commission on a complaint filed against the School, which had not yet reached the public hearing stage, MHS filed a Motion to Dismiss for Lack of Jurisdiction (Motion to Dismiss), claiming it was not a public accommodation under the Pennsylvania Human Relations Act[1] (Act). Without holding a hearing, a Commission Motions Examiner denied the Motion to Dismiss, concluding that the School was a public accommodation. MHS requested immediate certification for appeal, which was denied. Thereafter, MHS filed a petition for review seeking appellate review of the denial of the Motion to Dismiss under Pennsylvania Appellate Rule of Procedure 1311 (note), Pa.R.A.P. 1311 (note).[2] Following argument, the Court granted review, limited to the issue of "[w]hether [MHS] qualifies as a 'public accommodation' under Section 4(*l*) of the . . . Act, 43 P.S. § 954(*l*)." *Milton Hershey Sch. v. Pa. Human Relations Comm'n* (Pa. Cmwlth., No. 651 C.D. 2019, filed June 26, 2019). It was on this **limited** issue that the Court accepted jurisdiction; the matter otherwise remained with the Commission,

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

[2] The note to Rule 1311 provides that:

[w]here the administrative agency or lower court refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect . . . is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

Pa.R.A.P. 1311 (note).

2

with those proceedings stayed. Further, noting that, on the same day the Motion to Dismiss was denied, the Motions Examiner issued an order maintaining the matter under seal in accordance with the Commission's regulations subject to the filing of valid waivers by those whose private, confidential information could be at issue, the reasons for the Motions Examiner's decision to maintain the seal, and the fact that the matter had not yet reached public proceedings before the Commission, MHS requested that the seal be maintained by the Court, which the Court granted following argument.

Complainant sought reconsideration of the decision to seal the record. Following argument on both the request for reconsideration to unseal the record and on the merits of the limited issue accepted for appellate review, the Court issued its decision. *Milton Hershey Sch. v. Pa. Human Relations Comm'n*, 220 A.3d 713 (Pa. Cmwlth. 2019). Therein, Complainant's reconsideration request was granted in part, to the extent that the Court issued a reported opinion addressing the legal issues involved, which did not require reference to any of the underlying facts related to the complaint or the actions taken after its filing. The case and record otherwise continued to remain under seal. *Id.* at 715-16. On the merits of the interlocutory petition for review, the Court vacated the Commission's order and "remanded [the matter] for an evidentiary hearing at which a record can be created in order to resolve th[e] jurisdictional question, which is a determination for the Commission in the first instance." *Id.* at 722.

With this procedural background in mind, the Court now turns to The Inquirer's Application, as well as the Application to Respond and Application to Submit Documents, which are before the Court.

3

**II. The Inquirer's Application and Responses**

*A. Intervention*

    1. Arguments

        a. <u>The Inquirer</u>

On December 4, 2019, the Inquirer filed its Application seeking to intervene in the above-captioned matter for the limited purpose of asking that the record be unsealed. (Application at 1, 4.) The Inquirer avers that the matter decided by the Court in this case is one of significant public concern throughout Pennsylvania and that allowing The Inquirer, as a daily newspaper that has previously reported on matters involving MHS, to intervene vindicates the public's constitutional and common law rights to access the judicial records filed in this case. Citing Pennsylvania Rule of Civil Procedure 2327(4), Pa.R.C.P. No. 2327(4), The Inquirer maintains that intervention is necessary for it to assert its "legally enforceable interest" to access the docket and other judicial records. According to The Inquirer, the right of the press to intervene for this reason has been recognized by Pennsylvania Courts in both criminal and civil proceedings. *See, e.g.*, *Commonwealth v. Upshur*, 924 A.2d 642, 645 n.2 (Pa. 2007); *PA Childcare LLC v. Flood*, 887 A.2d 309, 313 (Pa. Super. 2009). The Inquirer notes that MHS offers no argument that it will be prejudiced by The Inquirer's intervention beyond that the School does not want the disclosure of any records in this matter.

        b. <u>The Commission</u>

The Commission offers no argument in opposition to The Inquirer's request to intervene, agreeing with the general premise of The Inquirer's arguments relating to the public's right to access judicial documents and records.

c. <u>MHS</u>

MHS responds that The Inquirer's request to intervene should be denied with prejudice because it does not meet the requirements of Pennsylvania Rules of Civil Procedure 2327 and 2329, Pa.R.C.P. Nos. 2327, 2329. First, MHS points out that there is no matter pending before the Court, as required by Rule 2327, because the underlying appeal has been resolved and that matter was remanded for further proceedings. This Court has held, MHS argues, that a petition to intervene filed after a dispositive order is filed is too late. *Wecht v. Roddey*, 815 A.2d 1146, 1153 (Pa. Cmwlth. 2002) (quoting *Estate of Albright*, 545 A.2d 896, 899 (Pa. Super. 1988)). Second, MHS argues the Application is untimely and unduly delayed where The Inquirer had knowledge of the matter while it was initially pending before the Commission and before the Court but did not seek intervention until a month after the Court issued its opinion and order. According to MHS, it need not establish that it would be prejudiced by the delay. Third, MHS asserts The Inquirer's interests have been adequately represented by Complainant's counsel, who has already pursued the very relief sought by the putative intervenor. *Pa. Assoc. of Rural and Small Schs. v. Casey*, 613 A.2d 1198, 1200-01 (Pa. 1992) (denying intervention where "the substance of [the parties'] positions covers the substance of the positions proposed by [the intervenor]"). Finally, MHS contends allowing The Inquirer's intervention at this time would unduly prejudice MHS because the appeal has been concluded, there has been no adversarial proceeding or hearing of any kind on the underlying matter, and the underlying proceeding of the Commission is confidential under Section 9(c) of the Act, 43 P.S. § 959(c).[3]

---

[3] This section of the Act governs "Procedure" and provides, in pertinent part:

**(Footnote continued on next page…)**

5

2.  Discussion

The Inquirer wishes to intervene in this matter, not to participate in ongoing litigation, but for the sole purpose of asking the Court to unseal judicial records. Although not argued by the parties, the Supreme Court has not required intervention when the public wishes to unseal judicial records in a completed judicial proceeding. *In re Estate of duPont*, 2 A.3d 516 (Pa. 2010). In *duPont*, a member of the public filed a petition seeking access to records that had been sealed by an orphan's court in an incapacitation proceeding that had been resolved nearly 10 years prior to the petition for access. *Id.* at 517-18. No intervention was required for the court to entertain the request to open records previously sealed, and all three courts, orphans', Superior and Supreme, addressed the request, without requiring the petitioner to intervene in the previously resolved proceedings.

Citing precedent involving media intervention in **active** or **ongoing** litigation, *Upshur*, 924 A.2d at 645 n.2 (citing *Commonwealth v. Fenstermaker*, 530 A.2d 414, 416 n.1 (Pa. 1987)), and *PA ChildCare, LLC*, 887 A.3d at 311, The Inquirer argues that it should be granted Intervenor status. However, in accordance

---

**(continued…)**

(c) . . . . **If it shall be determined after [] investigation that probable cause exists for crediting the allegations of the complaint, the Commission shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion. The members of the Commission and its staff shall not disclose what has transpired in the course of such endeavors**: Provided, That the Commission may publish the facts in the case of any complaint which has been dismissed, and the terms of conciliation when the complaint has been adjusted, without disclosing, except as required by the Fair Housing Act, the identity of the parties involved.

43 P.S. § 959(c) (emphasis added).

6

with *duPont*, because the limited proceedings before this Court have been resolved, and the case closed, intervention pursuant to Pa.R.C.P. No. 2327,[4] is not necessary in this case for The Inquirer to assert its "legally enforceable interest" to access the docket and other judicial records. Because the Court considers The Inquirer's Application as a petition to access this Court's records, intervention is unnecessary and to the extent the Application seeks intervention, it is dismissed as moot.

### B. Unsealing Docket and Judicial Records

#### 1. Arguments

##### a. The Inquirer

The Inquirer argues that Pennsylvania law mandates open and public judicial proceedings and that the public and the press have a presumptive right to access under the United States and Pennsylvania Constitutions, as well as under the common law. *PA Childcare LLC*, 887 A.2d at 312. The burden to overcome the presumption is on the party seeking closure of a record or case, The Inquirer asserts, and general privacy concerns are insufficient to justify such relief. According to The Inquirer, both the First Amendment to the United States Constitution and article I, section 11 of the Pennsylvania Constitution allow for a right of access to court proceedings and judicial records. *Publiker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *PA Childcare LLC*, 887 A.2d at 312; *In re M.B.*, 819 A.2d 59, 61 (Pa. Super. 2003); *Katz v. Katz*, 514 A.2d 1374, 1380 (Pa. Super. 1986). In determining whether the presumption of access applies to a particular proceeding or document, The Inquirer argues, two considerations are examined: "experience" – whether the proceeding or document is the type that has

---

[4] Under Rule 2327, it is "[a]t any time during the pendency of an action, [that] a person not a party thereto shall be permitted to intervene therein . . . ." Pa.R.C.P. No. 2327.

7

historically been open to the press or general public; and "logic" – whether public access would play "a significant positive role in the functioning of the particular process in question." (Application ¶ 13 (quoting *Press-Enter. Co. v. Superior Court of California*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*)).) The Inquirer argues that the constitutional right to access may only be overcome if closure serves a compelling governmental interest and is the least restrictive means of furthering that interest. *Publicker*, 733 F.2d at 1070; *In re M.B.*, 819 A.2d at 63. With regard to the common law right to access, The Inquirer points out that the Supreme Court has held the right applies to "any item that is filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making." (Application ¶ 17 (quoting *Upshur*, 924 A.2d at 648).) When this right applies, The Inquirer argues, "it must be weighed against any asserted interests in secrecy to determine whether sealing is justified." (*Id.* ¶ 18 (citing *Upshur*, 924 A.2d at 651).) Applying these principles here, The Inquirer contends, should result in the unsealing of at least part of the judicial records in this matter because the privacy issues must be minimal given that Complainant has attempted to unseal the record. (*Id.* ¶ 27.) Such records include, The Inquirer argues, the docket sheets and the briefs and reproduced record filed in support or opposition to MHS's appeal. According to The Inquirer, any confidential or sensitive information could be or should have been filed separately under seal, particularly in an appellate matter where the issue was primarily legal, not factual, in nature. Further, The Inquirer argues, the decision to maintain records or portions of records under seal must be supported by specific findings supporting that decision.

The Inquirer acknowledges that the record made before the Commission, the agency record, was sealed, and that it does not seek disclosure of that record.

However, The Inquirer argues that the reproduced record, even though it contains portions of the sealed agency record, should be unsealed because once it was filed with the Court, it became a judicial record and contains materials that the parties believe would be important to the Court's decision. The Inquirer asserts the public has a constitutional right to access the parties' arguments related to whether MHS is a public accommodation under the Act and which the Court considered in its decision-making process. The Inquirer challenges MHS's reliance on the various statutory and regulatory provisions regarding confidentiality and privacy, as such involve Complainant's, not MHS's, interests, and Complainant has expressed a desire to waive those protections. To the extent interests of third parties may be involved, The Inquirer states it is not seeking that information.

### b. The Commission

The Commission "agrees with the general premise of [T]he Inquirer's argument that the public has certain rights to inspect court dockets and related documents," and the Commission holds public hearings where probable cause has been found to believe the Act has been violated. (The Commission's Answer ¶ 11.) However, the Commission also acknowledges that the underlying matter was sealed by its Motions Examiner subject to the submission of valid waivers and that MHS argued in its requests to seal that the record and submissions in this matter would contain information relating to multiple subjects made confidential by various statutes. Given the public interest in the case, the Commission "requests that this . . . Court remand the case . . . to permit" the filing of valid waivers, which could, ultimately, render The Inquirer's Application moot. (*Id.* ¶ 15.)

c.  MHS

MHS argues The Inquirer's request to unseal should be denied beyond unsealing the docket sheet, which MHS does not oppose, because the public's right to access court and judicial records is not absolute and must be weighed against the competing needs and interests of those whose confidential information is contained in those records, particularly when the information is subject to statutory or regulatory protection.  *Stenger v. Lehigh Valley Hosp. Ctr.*, 554 A.2d 954, 959 (Pa. Super. 1989).  First, MHS maintains the records are investigative materials and the briefs are replete with information protected from disclosure by federal and state law, including Section 9(c) the Act; Section 708 of the Right-to-Know Law, which governs the exceptions to public disclosure of public records, 65 P.S. § 67.708;[5] multiple provisions of the Health Insurance Portability and Accountability Act (HIPAA), which govern the protection of medical information from public disclosure, 45 C.F.R. §§ 160.103(1), 164.502, 164.514(b)(2)(ii); and provisions of the Family Educational Rights and Privacy Act (FERPA), which govern the protection of educational records from public disclosure, 20 U.S.C. § 1232g.  MHS argues the Commission's contention that a valid waiver by Complainant would render all of the records available is incorrect as confidential information of others may be implicated and is inconsistent with the Commission's past practice of denying non-party access to preliminary investigative findings and proceedings.

Second, MHS asserts there is no constitutional right to access the records because The Inquirer's request does not meet the experience/logic test, as pretrial discovery materials are not subject to a constitutional right to public access. *Stenger*, 554 A.2d at 958.  According to MHS, the Commission's investigative

_____

[5] Act of February 14, 2008, P.L. 6.

10

materials and proceedings up to this point, which have not been open to the public, are akin to pretrial discovery, and do not satisfy the "experience" prong of the constitutional test. The Commission record, which is a prehearing, confidential record, MHS argues, does not satisfy the "logic" prong. MHS further argues that the records filed with the Commission, which would otherwise be confidential, are not rendered publicly accessible judicial records subject to disclosure simply because the School had to include them as part of its reproduced record in its efforts to seek redress from the Court to remedy a legal error made by the Commission.

Third, MHS argues that simply because a record or document is filed with a court does not, automatically, make it a judicial record; rather, the filing must have "adjudicatory significance." *N. Jersey Media Grp. v. United States*, 836 F.3d 421, 435-36 (3d Cir. 2016). It asserts that the Court's reported opinion in this case made clear that nothing in the record before the Commission formed the basis of the Court's decision to vacate the Commission's order. Thus, MHS maintains, materials contained within the reproduced record filed with the Court are not judicial records because they were not relied upon by the Court in its opinion. Because the Court specifically set forth the arguments, statutory provisions, and precedent it relied upon, the School argues no other filings are subject to public disclosure as "judicial records" because they were not of "adjudicatory significance" to the Court's decision in this case. MHS asserts there is good cause to deny The Inquirer's request to unseal because The Inquirer's reporter,

11

Complainant's counsel, and others have acted together to publicize confidential information in the past to MHS's detriment.[6]

Finally, MHS observes that this Court considered similar arguments in opposition to sealing the records from Complainant and concluded that the record should be sealed. According to MHS, the Court should reject further attacks on the Court's determination when nothing has changed.

### d. Complainant

Complainant filed an Application to Respond to MHS's Brief, which the Court grants.[7] Complainant challenges MHS's reliance on Section 9(c) of the Act. Complainant observes that this provision only requires confidentiality by the Commission or its staff on the endeavors taken to resolve unlawful discrimination via conference, conciliation, and persuasion. Complainant contends there is nothing, statutorily, stopping Complainant from publicly disclosing other items. Complainant further responds that the other statutory or regulatory provisions that MHS relies upon do not prohibit disclosure once the subject of the record waives the subject's confidentiality and privacy interests.

---

[6] Although MHS made specific allegations in this regard it is unnecessary to go into further detail because those allegations are not relevant to whether this record should be unsealed. Further, as MHS's Application to Submit Documents relates to materials associated with these arguments, and the Court does not rely on those contentions, MHS's Application to Submit Documents is denied as irrelevant.

[7] Because the Court's disposition does not rely on certain of MHS's allegations, which Complainant characterizes as "casting unwarranted aspersions" on Complainant's counsel and conspiracy theories, (Application to Respond at 1), similar to MHS's allegations, the Court will not consider or set forth those arguments.

## 2. Discussion

### a. Guiding Legal Principles

There is no dispute that "[o]ur courts have recognized a constitutional right of public access to judicial proceedings" under both the United States and Pennsylvania Constitutions, as well as an independent common law basis for such access. *Pa. ChildCare, LLC*, 887 A.2d at 312 (internal quotations and citations omitted). Thus, there is a "mandate for open and public judicial proceedings in both the criminal and civil settings." *Id.* The right to open and public judicial proceedings includes "a general right to inspect and copy public records and documents, including judicial records and documents." *Fenstermaker*, 530 A.2d at 418 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)). These rights are "not absolute, as the public may . . . be excluded from such proceedings or records to protect public or private interests." *duPont*, 2 A.3d at 519 (internal quotations and citations omitted); *see also Fenstermaker*, 530 A.2d at 420 (stating "the common law right to inspect documents . . . has not been held to be absolute," but there is a presumption of openness). Pennsylvania courts have "recognized in many contexts that our courts have an inherent power to control access to their records and proceedings and may deny access when appropriate—for example, to protect the privacy rights of individuals." *In re M.B.*, 819 A.2d at 62. Importantly, "general concerns for harassment or invasion of privacy" are not sufficient to support closure. *Commonwealth v. Long*, 922 A.2d 892, 906 (Pa. 2007).

In asserting the public's right to access to the sealed judicial records in this matter, The Inquirer asserts, based on common law and constitutional principles, that the Court must begin with a presumption of openness and that MHS has the burden of rebutting that presumption. The Inquirer challenges the Court's orders,

13

one of which is itself still sealed, on the basis that the Court did not make the findings necessary to support such orders.

In *duPont*, the Supreme Court emphasized that, in determining whether to grant public access to a sealed record, its analysis was guided by the nature of the underlying proceedings, there, incapacity and guardianship proceedings, in which "the common-law presumption of openness ha[d] been substantially curtailed through legislative enactment. . . ." 2 A.3d at 522. *See* Section 5511(a) of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. § 5511(a) (which allows for the closure of incapacity proceedings to the public). In this context, the Supreme Court rejected the idea that the burden forever remained on the party who sought to seal or to retain the seal on the record because "[s]uch an approach would be, at best, inflexible" and "at odds with the concept that the constitutional mandate is not absolute." *duPont*, 2 A.3d at 524-25. Rather, the Court permitted flexibility "in view of the courts' supervisory powers over their records." *Id.* at 525. For these reasons, the Supreme Court held that neither the common law nor constitutional law requires a court to place the burden of demonstrating the need for continued confidentiality whenever a non-litigant seeks access to the record in an incapacity proceeding. *Id.* at 521, 525. Rather, in that context, the burden lies on the individual seeking public access to the records to "demonstrate good cause" to modify the order sealing the matter, an approach that respects a court's prior order, while also providing a means through which the public can seek to access those records. *Id.* at 525.

In this case, the Court did issue an order sealing the court records, which, upon reconsideration, the Court largely affirmed. However, because this case is not an incapacity or guardianship proceeding in which "the presumption of

14

openness has been substantially curtailed," it is unclear whether the Supreme Court's discussion of the burden in *duPont*, would apply here. To the extent The Inquirer had to "demonstrate good cause" for the Court to review its sealing order, the Court finds that there is reason for it to rebalance its previous considerations regarding public access based on The Inquirer's contentions.

We begin by "highlighting that a request to seal or unseal judicial records is a matter committed to the discretion of the . . . court" whose records are at issue. *duPont*, 2 A.3d at 521 (citing *Upshur*, 924 A.2d at 651). In reviewing public access to judicial records, there are two methods of analysis: a constitutional analysis and a common law analysis. *In re M.B.*, 819 A.2d at 62 n.2. "[T]here is [an] overlap between the common law and the constitutional inquiries, since both rights of access seek to foster the fairness and the appearance of fairness of the . . . justice system." *Long*, 922 A.2d at 897. The inquiry begins with a presumption of openness. In addressing the constitutional right of access, courts have "adopted the 'experience and logic' test." *Id*. at 900-01. The experience test "considers whether there has been a 'tradition of accessibility,'" and the logic test considers "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 900 (quoting *Press-Enterprise II*, 478 U.S. at 8). "In conducting the 'logic' inquiry, [the court] must balance two competing concerns – the value of openness . . . that enhances the fairness and perception of fairness in the . . . justice system versus the . . . privacy concerns" involved. *Id.* at 903. "If the right asserted is grounded in both experience and logic, then a right of access to the proceedings in question exists." *Id.* It is then the burden of the party seeking closure to "rebut the presumption of openness by showing that closure serves an

15

important governmental interest and there is no less restrictive way to serve that interest." *In re M.B.*, 819 A.2d at 63 n.2.

The common law approach requires "the party seeking closure [to] show that [the] interest in secrecy outweighs the presumption of openness." *Id.* "Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied." *Fenstermaker*, 530 A.2d at 420. Thus, under the common law approach, "the public may be 'excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests[, including]: . . . the privacy and reputations [of innocent parties] . . . .'" *Katz*, 514 A.2d at 1377 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)) (first alteration added).

Access to judicial records may be limited by other principles as well, such as statutory or regulatory provisions or court rules. For example, access to "files and records of the court in a proceeding under" the Juvenile Act is limited, and those materials are disclosable to the public under only very limited circumstances. Section 6307 of the Juvenile Act, 42 Pa. C.S. § 6307. Similarly, this Court is bound by the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania (Public Access Policy) adopted by the Pennsylvania Supreme Court. The Public Access Policy recognizes the importance of the public's access to the courts, but also acknowledges that court filings may contain "extensive amounts of personal data concerning individuals' finances, unique identifiers, medical history, and so on" and the need for courts to consider "issues regarding the need for openness and transparency and the concern for personal privacy and security."

16

*Explanatory Report* of the *Public Access Policy* at 1-2.[8]  Sections 7 and 8 of the Public Access Policy address how to file "Confidential Information" and "Confidential Documents" with the Court, as such information and documents are not subject to access by the public.  Notably, both sections reflect that they are "not applicable to cases that are sealed," meaning that none of the relevant redactions or special filing of forms apply to sealed cases as those cases are not accessible to the public.  *See* Section 7.0(A) and *Commentary*, and Section 8.0(A) and *Commentary* of the *Public Access Policy*.

In applying these principles, the Court is mindful that access to court records is to

> assure the public that justice is done even-handedly and fairly; to discourage perjury and the misconduct of participants, to prevent decisions based on secret bias or partiality; to prevent individuals from feeling that the law should be taken into the hands of private citizens; to satisfy the natural desire to see justice done; to provide for community catharsis; to promote public confidence in government and assurance that the system of judicial remedy does in fact work; to promote the stability of government by allowing access to its workings, thus assuring citizens that government and the courts are worthy of their continued loyalty and support; to promote an understanding of our system of government and courts.

*Fenstermaker*, 530 A.2d at 417.

### b.  The Records at Issue

The Inquirer characterizes the records here as either "agency records," those that were filed with the Commission in the first instance and transferred to the Court upon the filing of MHS's petition for review, or "judicial records," those that

---

[8]  The Public Access Policy and Explanatory Report are available at http://www.pacourts.us/public-records/public-records-policies (last visited February 7, 2020).

17

were filed with or by the Court. Acknowledging that the "agency records," at the time of argument, are sealed by the Motions Examiner's sealing order, The Inquirer does not ask this Court to unseal them. The Inquirer is requesting the Court to unseal "judicial records," which are "item[s] that [are] filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making," *Upshur*, 924 A.2d at 648, as well as orders of the Court. MHS relies, in part, on its assertions that Complainant made similar arguments regarding public access and that there has not been any change in the circumstances, to argue that the seal on all of the records, other than the docket sheet, should remain intact. It points to the sealing of the matter by the Commission, as well as statutory and regulatory reasons, for denying the Application.

However, there has been a change in the interests asserted and in the circumstances. Although MHS asserts Complainant made the same arguments as The Inquirer, Complainant's interest, as a party with access to all of the filings and a personal stake in the outcome of the litigation, is different from the public's interest at large. Unlike a party with an interest in the outcome of the litigation and, therefore, whose arguments are furthering the advocacy of the party's position, The Inquirer's interest in "raising assertions of the public rights of access to information" in court records is for the public. *Fenstermaker*, 530 A.2d at 416 n.1. Further, the litigation in the underlying appeal is now concluded, thereby allowing the Court to review the finally filed records in light of the public interest asserted by The Inquirer and rebalance that important interest with the protected privacy interests of those involved. In doing so, the Court notes that many of the records that concern MHS are in the materials filed with the Commission.

The Court is mindful that there were records filed with the Court involving minors, and their medical and educational information, which had been sealed by the Commission. Such records implicate serious privacy concerns. Further, MHS filed its Petition for Review asking this Court to decide a discrete legal issue. The matter remains with the Commission, there have been no factual findings, and any allegations of fact as they relate to any students or third parties are sealed by the Commission. The opinion of this Court on the discrete legal issue of jurisdiction was not dependent upon any of these factual allegations. The Court also recognizes MHS's argument that, if the Commission does not have jurisdiction over it as a public accommodation, the preliminary proceedings before the Commission would not become public. For these reasons, and given the nature of the interlocutory appeal that was before this Court, which was to decide a discrete legal issue in an ongoing agency proceeding, the Court will not unseal the records that were sealed by the Commission, and the information relating to individuals who were minors when the events relevant to the underlying complaint occurred.

With this reasoning in mind, the Court will examine whether to unseal: (1) the docket sheet; (2) the agency records; (3) orders of the Court; (4) the reproduced record; (5) MHS's Petition for Review; (6) appellate briefs addressing the merits of whether MHS is a public accommodation; and (7) other miscellaneous filings.

i. The Docket Sheet

Because there is no disagreement that the docket sheet can be unsealed, it **shall be unsealed** after initials are substituted for Complainant's name.

19

## ii. The Agency Record and Supplemental Record

Because there is no disagreement that the agency record, which includes the supplemental agency record filed on July 31, 2019, should remain sealed, those filings **shall remain sealed**.

## iii. Orders of this Court

After review of the Orders of the Court, the following do not contain any private information of individuals or MHS and **shall be unsealed**: Orders dated June 5, 2019; June 13, 2019; June 17, 2019; June 26, 2019; August 21, 2019; August 22, 2019; November 21, 2019; December 3, 2019; December 9, 2019; December 16, 2019; December 18, 2019, of which there are two; December 19, 2019; and January 2, 2020. The Court's November 4, 2019 Opinion and Order shall also be unsealed. Copies of the Orders dated July 24, 2019, July 25, 2019, and August 9, 2019, will be made available after initials are substituted for Complainant's name.

## iv. The Reproduced Record

The Inquirer seeks to unseal the reproduced record, which was filed with the Court by MHS, on the basis that it is a "judicial record" and the Court must have considered its contents in its decision-making process. The Inquirer is not seeking access to the agency record, which is sealed before the Commission. However, the reproduced record is comprised of parts of the agency record, which the appellate procedural rules require the petitioner to file with the Court. In essence, it is nothing more than a copy of parts of the agency record. This copy of the agency record is required for the convenience of the court and the parties because it would be difficult for multiple judges and the parties to rely solely on one original paper

20

record, which has to be carefully protected at all times. The mere fact that the agency record was copied in compliance with the rules does not necessarily transform the copy into something other than the agency record it was. This is particularly the case here.

It cannot be said that there is a "tradition of accessibility" to documents **already under seal** and **precluded from public disclosure** or that "public access" to **already sealed documents** would "play[] a significant positive role in the functioning of the particular process in question," here, a very limited appeal addressing a discrete legal issue, so as to meet the experience and logic prongs of the constitutional test for access. *Long*, 922 A.2d at 900 (quoting *Press-Enterprise II*, 478 U.S. at 8). Continuing the protection of the documents that are already under seal and respecting the decision of an administrative agency to seal its record, while the matter is still pending before that agency, is a compelling governmental interest, and maintaining the seal on copies of those documents is the least restrictive means of furthering that interest.

Balancing the public's interest in access, as asserted by The Inquirer, with the important privacy interests of those whose confidential and privileged information may be contained within the records. Although the public's interest in access is unquestionably important, the Motions Examiner's sealing of the matter in the first instance reflects the countervailing importance of the multiple privacy interests that are implicated in these materials. The common law approach recognizes that the public may be "excluded . . . from court proceedings or the records of court proceedings to protect . . . the privacy and reputations [of innocent parties]." *Katz*, 514 A.2d at 1377. In sealing the matter, the Motions Examiner was concerned for not only Complainant's privacy interests, as reflected in the

21

conclusion that a sufficient waiver had not been provided, but also for third parties whose confidential and privileged information could be disclosed to the public in the proceedings before the Commission. The Court shares these same concerns regarding the accessibility of confidential and privileged information to the public in the absence of valid waivers by those whose information is contained in the reproduced record, which was filed only because MHS sought to redress an error unrelated to that information. Balancing these competing interests results in the conclusion that **the reproduced record should remain under seal**.

v. The Petition for Review

The Petition for Review, although it does contain some factual information that is under seal, is comprised in large part of MHS's legal arguments to this Court. This document, having been filed of record with the Court and considered by the Court in granting MHS permission to appeal, is a judicial record. The Petition for Review can, therefore, be unsealed except for Section IV B. in the Statement of the Case, specifically paragraphs 54 – 85 and associated footnotes, which will not be disclosed as they contain material that has been sealed. Further, the Appendix to the Petition for Review contains documents that were sealed by the Commission; therefore, the Appendix to the Petition for Review will also remain sealed. Complainant will be identified by initials in the Petition for Review. MHS is directed to exchange a proposed redacted version of its Petition for Review with the Commission and Complainant within 10 days of this Opinion and Order and to promptly file a certificate of service with the Court. The Commission and Complainant shall have 10 days to review the proposed redactions and to make a good faith effort to resolve any disputes that may arise. The final form of the redacted Petition for Review shall be filed with the Court on

March 3, 2020. MHS is directed to file an extra paper copy of the redacted Petition for Review with the Court to be provided to The Inquirer.

### vi. Appellate Briefs

The Inquirer seeks access to the appellate briefs in which the parties to the underlying appeal set forth their arguments regarding MHS's status as a public accommodation under the Act for the Court's consideration. These documents are judicial records, as they were filed with the Court, and whether the Court found all the arguments persuasive or not, the Court read the briefs and was informed by their presentation as they related to the discrete legal issue before the Court. Consistent with the previous discussion regarding the underlying facts and proceedings, which remain under seal before the Commission, the Court will grant The Inquirer's request subject to the following redactions:

- MHS's Brief: Sections B and C of the Statement of the Case, and Appendices A and B;

- Commission's Brief: The first paragraph of the Introductory Statement, and the case citation to the underlying case before the Commission included in the table of authorities;

- Complainant's (Intervenor) Brief: None;

- MHS's Reply Brief: Introduction, and the references to Complainant's name found on pages 8, 18, and on the Proof of Service.

The parts of the appellate briefs set forth above shall be redacted from the briefs. MHS, the Commission, and Complainant are directed to exchange the proposed

redacted copies of the briefs within 10 days of this Opinion and Order and to promptly file a certificate of service with the Court. MHS, the Commission, and Complainant shall have 10 days to review the proposed redactions and to make a good faith effort to resolve any disputes that may arise. The final form of the redacted briefs shall be filed with the Court on March 3, 2020. MHS, the Commission, and Complainant are directed to file an extra paper copy of the redacted briefs with the Court to be provided to The Inquirer.

### vii. Other Miscellaneous filings

After review of the other filings submitted to the Court and given the previous explanation regarding maintaining the seal on certain materials, the following items, and their associated Proofs of Service, will **remain under seal**:

- MHS's Application to File Under Seal filed June 3, 2019;
- MHS's Application to Stay filed June 3, 2019;
- MHS's Answer to Complainant's Application for Partial and Prospective Reconsideration-Reargument (Application for Reconsideration) filed July 17, 2019;
- The parties Joint Stipulation to Correct the Record filed July 19, 2019;
- MHS's Answer to Complainant's Reply to MHS's Answer to the Application for Reconsideration filed on August 13, 2019; and
- Complainant's Response to MHS's Brief in Opposition to the Application to Intervene and Unseal filed on January 7, 2020.

In addition, the PACFile automatically-generated proofs of service, that are already of record, **will remain under seal** as they contain Complainant's name.

24

The following filings **will be unsealed**, after initials are substituted for Complainant's name:

- MHS's Application to Expedite filed June 3, 2019;

- The Commission's Application to Quash filed June 7, 2019;

- The Commission's Entry of Appearance filed June 7, 2019;

- MHS's Praecipe to File Verifications filed on June 7, 2019;

- Complainant's Notice of Intervention filed on June 14, 2019;

- Complainant's Application for a Continuance filed June 14, 2019;

- MHS's Answer to Complainant's Application for a Continuance filed June 17, 2019;

- Complainant's Application for Reconsideration filed on July 3, 2019;

- Complainant's Reply to MHS's Answer to the Application for Reconsideration filed on July 31, 2019;

- MHS's Praecipe for Withdrawal of Appearance filed on August 15, 2019;

- MHS's Entry of Appearance filed on August 19, 2019;

- MHS's Application for Relief filed on August 21, 2019;

- MHS's Notice of Authority filed on October 31, 2019;

- MHS's Application to Amend Order of November 4, 2019 (Application to Amend) filed on November 14, 2019;

- MHS's Application for Extension of Time to File Answer filed on December 11, 2019;

- MHS's Entry of Appearance filed on December 11, 2019;

- MHS's Application For Leave to Submit Sealed Documents for *In Camera* review (Application to Submit Documents) filed December 31, 2019; and

- Complainant's Application for Leave to Respond to Brief of MHS in Opposition to The Inquirer's Application to Intervene and Unseal filed on January 7, 2020.

Further, consistent with the previous discussion regarding the underlying facts and proceedings, which remain under seal before the Commission, Section II(A) of MHS's Answer to The Inquirer's Application to Intervene and Unseal, which was filed on December 30, 2019, shall be redacted. MHS, the Commission, and Complainant are directed to exchange the proposed redacted copies of these items within 10 days of this Opinion and Order and to promptly file a certificate of service with the Court. MHS, the Commission, and Complainant shall have 10 days to review the proposed redactions and to make a good faith effort to resolve any disputes that may arise. The final form of the redacted items shall be filed with the Court on March 3, 2020. MHS, the Commission, and Complainant are directed to file an extra paper copy of the redacted items with the Court to be provided to The Inquirer.

The following filings **will be unsealed without redaction**:
- The Commission's Entry of Appearance filed June 14, 2019;
- The Commission's Answer to MHS's Petition for Review filed June 17, 2019;
- The Commission's Entry of Appearance filed on July 29, 2019;
- The Commission's Answer to MHS's Application to Amend filed November 25, 2019;
- The Inquirer's Application to Intervene and Unseal filed December 4, 2019;
- The Inquirer's Applications to be Admitted Pro Hac Vice filed December 10, 2019;

- The Inquirer's Praecipes to Withdraw Applications to be Admitted Pro Hac Vice filed December 17, 2019;

- The Inquirer's Applications to be Admitted Pro Hac Vice filed December 17, 2019;

- The Inquirer's Application for Leave to File Supplemental Memorandum in Further Support of the Application to Intervene and exhibits filed December 17, 2019;

- The Inquirer's Supplemental Memorandum of Law filed December 17, 2019;

- The Commission's Answer to The Inquirer's Application to Intervene and Unseal filed December 18, 2019; and

- The Inquirer's Answer to MHS's Application to Submit Documents filed January 7, 2020.

## III.    Conclusion

The Inquirer did not have to intervene in order to pursue the unsealing of the judicial records in this closed matter. The Court recognizes the important principles relating to public access to judicial records and the role that the press plays in informing the public, the privacy interests involved, and the fact that the seal imposed on the record by the Motions Examiner of the Commission remains in place, and will grant The Inquirer's request to unseal to the extent set forth above. All other filings, including the certified record filed with the Court by the Commission, shall remain under seal as they have at the Commission. To the extent the Application is not granted, it is denied without prejudice so that, in the event the Commission unseals any portion of the agency record that had been filed with this Court as part of the reproduced record, or other circumstances change,

The Inquirer is not precluded from filing a new Application seeking access to additional records.

_____
**RENÉE COHN JUBELIRER,** Judge

28

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milton Hershey School,                          :
                     Petitioner    :   **CASE SEALED**
                                         :
                 v.                     :   No. 665 C.D. 2019
                                         :
Pennsylvania Human Relations              :
Commission,                                       :
                    Respondent    :

# **O R D E R**

**NOW**, February 11, 2020, after considering the application filed by The Philadelphia Inquirer, PBC (The Inquirer), to intervene and unseal the record (Application), the answers filed by the Milton Hershey School (MHS), the Pennsylvania Human Relations Commission (Commission), and Complainant, an intervenor in the underlying petition for review, and oral argument, the Application is **DISMISSED AS MOOT** in part, **GRANTED** in part, and **DENIED WITHOUT PREJUDICE** in part in accordance with the foregoing opinion. The Application is **DISMISSED AS MOOT** to the extent The Inquirer requested to intervene in the above-captioned matter for the limited purpose of seeking to unseal the docket sheet and judicial records. The Application is **GRANTED** as set forth in the foregoing opinion. MHS, the Commission, and Complainant are directed to exchange the proposed redacted copies of the items referenced in the foregoing opinion within 10 days of this Order and to promptly file a certificate of service with the Court. MHS, the Commission, and Complainant shall have 10 days to review the proposed redactions and to make a good faith effort to resolve any disputes that may arise. The final form of the redacted items shall be filed

with the Court on March 3, 2020. MHS, the Commission, and Complainant shall file an extra paper copy of the redacted items with the Court to be provided to The Inquirer. The Application is **DENIED WITHOUT PREJUDICE** to the extent the agency record and supplemental agency record filed by the Commission with the Court remains under seal. The Application is otherwise **DENIED WITHOUT PREJUDICE** and the other materials filed with the Court as set forth in the foregoing opinion shall remain under seal. In addition, the Application for Leave to Respond to MHS's Brief in Opposition to the Application filed by Complainant is **GRANTED**, and MHS's Application for Leave to Submit Sealed Documents for *In Camera* Review is **DENIED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge