PA CHILDCARE LLC, Appellee

v.

Stephen L. FLOOD, Thomas P. Crofcheck, and Leonard Pocius.

Appeal of: The Times Leader, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.
Filed Nov. 16, 2005.
Reconsideration Denied Jan. 5, 2006.

Ralph E. Kates, III, Wilkes–Barre, for appellant.

Timothy P. Keating, Harrisburg, for Pocius and Crofcheck, appellees.

Geoffrey R. Johnson, Philadelphia, for PA Childcare, appellee.

Before: HUDOCK, BOWES and BECK, JJ.

OPINION BY BOWES, J.:

¶ 1 The Times Leader ("Newspaper") appeals the denial of its petition to intervene and request that the record in this action be unsealed.[1] We reverse, grant intervention, vacate the order sealing the record, and remand.

¶ 2 We first recite the pertinent background facts. In a prior proceeding, the Luzerne County Juvenile Detention Center (the "Center") was closed by order of the trial judge in the present matter.[2] PA

---

1. The order is final and appealable under the collateral order rule embodied in Pa.R.A.P. 313. *Kurtzman v. Hankin,* 714 A.2d 450 (Pa.Super.1998).

2. Those proceedings also were sealed.

ChildCare LLC ("ChildCare") owns a juvenile detention and treatment facility in Luzerne County and assumed control of juvenile detention placements formerly handled by the Center through a multiyear, $58,000,000 lease that became effective January 1, 2005. Stephen Flood, the County Controller of Luzerne County, publicly opposed the arrangement with ChildCare.

¶ 3 In 2004, the Pennsylvania Department of Public Welfare ("Department") conducted an audit of ChildCare, which encompassed the anticipated 2005 lease; the audit was performed by Thomas Crofcheck, Director of the Division of Audit and Review, Bureau of Financial Operations of the Department. The preliminary results of the audit were that ChildCare's proposed *per diem* charges were the highest in the Commonwealth and that under the proposed lease, the County would be overcharged. ChildCare then received citations for regulatory violations from the Office of Children, Youth and Families, Northeast Regional Office of the Department, headed by Regional Director Leonard Pocius. The preliminary results of the Department's audit were given to Mr. Flood and then made available to the press. Shortly thereafter, ChildCare initiated this action against Mr. Flood, Mr. Crofcheck, and Mr. Pocius.

¶ 4 The complaint was filed on December 17, 2004, simultaneously with a motion to seal the record and a motion seeking injunctive relief. The two motions were summarily granted on December 17, 2004, before any of the defendants had an opportunity to respond to the averments in the motions. The action was brought pursuant to the Uniform Trade Secrets Act, 12 Pa.C.S. § 5301 *et seq.* ("Act"), against the three defendants individually but based on actions that they performed in their official capacities. ChildCare maintained that the manner in which it operated its business was unique, constituted a trade secret, and that the Department's audit exceeded the scope permitted under state law because it sought information about the 2005 lease between ChildCare and Luzerne County, which is a public authority.

¶ 5 ChildCare averred that Mr. Flood subpoenaed documents that it had provided to Mr. Crofcheck, which purportedly contained trade secrets. After Mr. Crofcheck complied with the subpoena, Mr. Flood made some of those documents public. ChildCare claimed that Mr. Flood did not have authority to issue that subpoena to the Department. Mr. Pocius then issued documents informing ChildCare that it was not in compliance with regulations governing the audit.

¶ 6 ChildCare maintained that its business model was unique because it was "privately designed, financed and constructed." Memorandum of Law in Support of Motion for Special and Preliminary Injunctive Relief, 12/17/04, at 2. ChildCare contracted with Northwestern Human Services, a competitor owning numerous similar facilities, for management and counseling services. ChildCare also suggested that it needed to keep confidential from its competitor "internal financial information, business model and structure" as well as "internal financial information [which was] the result of innovative compilations of data." *Id.* at 2.

¶ 7 On December 23, 2004, Newspaper petitioned to intervene, challenged the *ex parte* order sealing the record, and sought to open the proceedings to the public. That petition was summarily denied without a hearing on December 23, 2004, and this appeal followed.

¶ 8 We review a trial court's decision to grant or deny access to judicial proceedings under an abuse-of-discretion

standard. *Zdrok v. Zdrok,* 829 A.2d 697 (Pa.Super.2003). "Our courts have recognized a constitutional right of public access to judicial proceedings based on Article I, Section 11 of the Pennsylvania Constitution, which provides that 'all Courts shall be open.'" Pa. Const. art. I, § 11. *In re M.B.,* 819 A.2d 59 (Pa.Super.2003), *petition for allowance of appeal granted subnom., Commonwealth v. Dellisanti,* 577 Pa. 671, 842 A.2d 405 (2004). The right of public access to judicial proceedings has an independent basis in the common law as well as in the United States Constitution. *Hutchison v. Luddy,* 398 Pa.Super. 505, 581 A.2d 578 (1990), *rev'd on other grounds,* 527 Pa. 525, 594 A.2d 307 (1991); *see also Commonwealth v. Upshur,* 2005 PA Super 300, 882 A.2d 499; *Storms v. O'Malley,* 779 A.2d 548, 569 (Pa.Super.2001) ("'In Pennsylvania, the common law, the first amendment to the United States Constitution, and the Pennsylvania Constitution, all support the principle of openness [of all judicial proceedings].'") Accordingly, Pennsylvania has a mandate for open and public judicial proceedings in both the criminal and civil settings. *Zdrok, supra; In re M.B., supra.*

¶ 9 This mandate of openness becomes particularly important in actions that concern public money, a contract with a public body, and allegations of misuse of millions of dollars in public funds. The strong presumption in favor of openness, can, however, in certain instances, be overcome.

There are two methods for analyzing requests for closure of judicial proceedings, each of which begins with a presumption of openness—a constitutional analysis and a common law analysis. Under the constitutional approach, which is based on the First Amendment of the United States Constitution and Article I, Section 11 of the Pennsylvania Constitution, the party seeking closure may rebut the presumption of openness by showing that closure serves an important governmental interest and there is no less restrictive way to serve that interest. Under the common law approach, the party seeking closure must show that his or her interest in secrecy outweighs the presumption of openness. *Zdrok, supra* at 699 (quoting *M.B., supra* at 62 n. 2) (citations omitted).

¶ 10 Since Appellant herein is a newspaper seeking access on constitutional grounds to a matter involving public figures and public money, we utilize the constitutional analysis to determine whether ChildCare overcame the presumption of openness. *M.B., supra* (when constitutional presumption of openness applies and proceedings have been closed, we employ constitutional analysis). Under this standard:

Once an interested party, such as the press, seeks access to [judicial] proceedings, the party seeking to keep the proceedings closed may rebut the presumption of openness by demonstrating that: (1) the denial of public access serves an important governmental interest, and (2) no less restrictive means to serve that interest exists. To satisfy these requirements, the party seeking closure must demonstrate that the material is the kind of information that the courts will protect and that there is good cause for the order to issue. A party establishes good cause by showing that opening the proceedings will work a clearly defined and serious injury to the party seeking closure. We have emphasized that only a *compelling* government interest justifies closure and then only by a means narrowly tailored to serve that interest.

*Id.* at 63 (citations omitted, emphasis in original).

¶ 11 We perceive no public interest in this case that would militate against openness. Given the substantial amount of public money involved and the allegations raised by Newspaper that there are connections among the principals of Child-Care and prominent county and judicial officials, the public interest weighs heavily in favor of openness. ChildCare's weak assertions involving trade secrets appear to be nothing more than a ruse to prevent public exposure. Indeed, ChildCare inconsistently claims uniqueness as a private facility and that it has a private competitor that should not be permitted access to ChildCare's pricing mechanisms. Furthermore, ChildCare's private interest in its trade secrets can be protected by less encompassing means than closing these proceedings in their entirety. Hence, the trial court manifestly abused its discretion in refusing to vacate its previous sealing order preventing access to these judicial proceedings.

¶ 12 As the trial court was incorrect when it ordered closure of the judicial proceedings, it lacked authority to deny intervention. *Hutchison, supra.* Since Newspaper had a right to access the judicial proceedings, it has a right to intervene in the action. *Id.*

¶ 13 Motion to quash filed by PA Child-Care LLC is denied. The December 17, 2004 order sealing the record is vacated. The December 23, 2004 order denying the intervention petition of Newspaper is reversed, and Newspaper is granted intervention in this action. Case remanded. Jurisdiction relinquished.