J-A07036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
  :
v.  :
  :
  :
VERONIKA CELESTE RODRIGUEZ  :
  :
  :  No. 662 MDA 2025
APPEAL OF: LEBTOWN, PENNLIVE,  :
LNP MEDIA GROUP, INC. AND WITF  :

Appeal from the Order Entered May 19, 2025
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000430-2023

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:        **FILED: JUNE 10, 2026**

Lebtown, Pennlive, LNP Media Group, Inc., and WITF (collectively, "Appellants") appeal from the trial court's May 19, 2025 order denying their motion to intervene and motion to unseal three docket entries.  After review, we reverse the court's order.

We glean the following facts and procedural history from Appellants' brief and the certified record.[1]  In the underlying criminal case, charges were brought in April of 2025 against Veronika Celeste Rodriguez for making false reports of a rape to law enforcement authorities.  Rodriguez had reported to police she had been the victim of an alleged sexual assault by an officer in the Pennsylvania Air National Guard.  During pretrial proceedings, the court issued

---

[1] We note the trial court did not file an opinion summarizing the facts and procedural history, nor did the Commonwealth file any brief with this Court.

a gag order on December 17, 2024, prohibiting counsel, Rodriguez, Rodriguez's family, and all witnesses from disseminating information about the case, including to the press. *See* Order, 12/17/24, at unnumbered 1 ("This order shall preclude any above[-]listed persons from speaking with anyone in the news media, online media, or any other source.").

According to Appellants, "[b]eginning in early 2025, three unknown entries appeared on the docket as 'sealed' without explanation." Appellants' Brief at 8. Two of those docket entries were dated February 10, 2025, and the third was dated May 2, 2025. As will be discussed *infra*, those records have since been unsealed and, thus, we now know the two sealed docket entries on February 10, 2025, were the Commonwealth's "Motion to Allow Dissemination and Transcription" and the trial court's order granting that motion.[2] The May 2, 2025 docket entry was a "Motion *in Limine*" filed by the Commonwealth, requesting it be permitted to introduce at trial "text messages, video and audio recordings, photographic records, and social media interactions obtained from [Rodriguez's] cellular telephone, as well as witness testimony describing [Rodriguez's] habit of maintaining records of her

_____

[2] The Commonwealth's motion stated "any audio/video evidence to be used at trial must have an accompanying transcript[,]" and requested, because of the court's gag order, "permission to provide said recordings to the [c]ourt [r]eporter to allow for transcription." Motion, 2/10/25, at 1 (unnumbered). The Commonwealth further declared the "[c]ourt [r]eporter would then be subject to the [g]ag [o]rder," and asked for "the sealing of this [o]rder to discourage further social media incidents." *Id.* The court's February 10, 2025 order set forth that the "evidence is permitted to be sent to certified court reporters to transcribe in anticipation of [t]rial. The motion and this [o]rder are to remain sealed." Order, 2/10/25, at 1 (single page).

interactions with married or unavailable paramours as leverage in the event her surreptitious affairs came to light." Motion, 5/2/25, at 2. The record indicates the motion *in limine* had been presented to the court one day before it was filed, at a hearing on May 1, 2025. The transcripts from that hearing show that text messages obtained from Rodriguez's phone (and which were attached as exhibits to the Commonwealth's motion) were displayed on a screen and also read into the record. N.T. Hearing, 5/1/25, at 2, 4, 5-16, 18-21, 40-51, 56-62. There was no mention of sealing the motion *in limine* at any point during the May 1, 2025 hearing, and we do not discern anywhere in the written motion that a sealing request was made.[3] Nevertheless, when the motion was entered on the docket on May 2, 2025, it was sealed.

On May 19, 2025, Appellants filed a "Motion to Intervene and Unseal," requesting the court grant their motion to intervene and unseal the two docket entries on February 10, 2025, and the docket entry on May 2, 2025. That same day, the court entered an order summarily denying Appellants' request

---

[3] However, at the end of the proceeding, the Commonwealth raised an issue concerning whether Rodriguez had violated the gag order by sending text messages indicating she was going to speak about the case on a podcast. **See id.** at 64. The court advised the Commonwealth to "file something" if it sought further action on the gag order. **Id.** The Commonwealth thereafter filed a motion for bail revocation based on Rodriguez's alleged violation of the gag order, and a hearing was conducted on May 8, 2025. At the close thereof, the court entered an order clarifying Rodriguez was not permitted to "communicate anything related to this case with any other individuals at any time except for counsel, defense witnesses[,] and family members." N.T. Hearing, 5/8/25, at 33-34. The court also stated all other provisions of the original December 17, 2024 gag order remained in full force and effect. **Id.** at 34.

to intervene and their motion to unseal.  **See** Order, 5/19/25, at 1 (single page).  The court offered no explanation in the order for its rulings.

Appellants filed a timely notice of appeal from the court's order.[4]  The court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement.  Before Appellants did so, Rodriguez's case proceeded to a jury trial on May 23, 2025, at the close of which the jury convicted her of interception of communications (18 Pa.C.S. § 5703(1)), disclosure of communications (18 Pa.C.S. § 5703(2)), and false reports to law enforcement authorities (18 Pa.C.S. § 4906(a)).[5]  On May 27, 2025, the court issued an order removing the gag order.  That same day, Appellants filed their Pa.R.A.P. 1925(b) statement.

On July 11, 2025, the trial court issued an order responding to Appellants' Rule 1925(b) statement and concluding "the issues raised on appeal are moot."  Order, 7/11/25, at 1 (single page).  The court explained that, "[o]n May 23, 2025, the jury trial at issue in this matter concluded and all information and docket entries were unsealed.  Because all documents are

---

[4] "It is well settled that an order that denies a request for public access to a criminal proceeding or judicial documents constitutes a collateral order from which an immediate appeal may be taken." **Commonwealth v. Selenski**, 996 A.2d 494, 495 n.2 (Pa. Super. 2010) (internal citations and quotations omitted). **See also Feliciani v. Impact Project, Inc.**, 347 A.3d 682 (Pa. Super. 2025) (permitting appeal from an order denying a newspaper's petition to intervene and unseal the record); **PA ChildCare LLC v. Flood**, 887 A.2d 309, 310 n.1 (Pa. Super. 2005) (stating an order denying a newspaper's petition to intervene and request the record be unsealed "is final and appealable under the collateral order rule embodied in Pa.R.A.P. 313") (citation omitted).

[5] Rodriguez was sentenced on August 20, 2025.  She filed a notice of appeal, which is currently pending before this Court at docket No. 175 MDA 2026.

no longer protected from disclosure, the issues raised on appeal are now moot." *Id.* Accordingly, the court asked that we quash Appellants' appeal. *Id.*

On July 24, 2025, Appellants filed with this Court an "Application for Access to Trial Court Record and Updated Briefing Schedule." Therein, they alleged the at-issue docket entries remained sealed and asked this Court to issue an order directing those records be unsealed. *See* Application, 7/24/25, at 4-5. On July 25, 2025, this Court issued an order directing the Commonwealth and Rodriguez to file responses to Appellants' application within 14 days. *See* Order, 7/25/25, at 1. On August 22, 2025, this Court issued another order stating the Commonwealth and Rodriguez had failed to file responses. *See* Order, 8/22/25, at 1. Because Rodriguez had been sentenced on August 20, 2025, we directed, *inter alia*, that the trial court unseal the record and respond to Appellants' application within seven days. *Id.* On September 8, 2025, the trial court filed a response, stating that "all records have been unsealed in this matter." Trial Court Response, 9/8/25, at 1 (unnumbered). Accordingly, on September 10, 2025, this Court issued an order denying Appellants' application to unseal the record as moot. *See* Order, 9/10/25, at 1.

Appellants thereafter filed their brief on October 20, 2025, raising the following two issues for our review:

> 1. Did the trial court err as a matter of law when it denied [Appellants'] motion to intervene for the limited purpose of seeking access to sealed judicial records?

- 5 -

2. Did the trial court err as a matter of law when it denied [Appellants'] motion to access sealed judicial records?

Appellants' Brief at 4.

Before addressing the merits of Appellants' arguments, we must determine if the trial court is correct their claims are now moot because the record has been unsealed. Appellants argue the unsealing of the records "does not affect this Court's jurisdiction to hear this appeal, as the issues being raised are 'capable of repetition yet evading review.'" *Id.* at 1-2 (citing *S. Pac. Terminal Co. v. Interstate Com. Comm'n*, 219 U.S. 498, 515 (1911); *Pub. Def.'s Off. of Venango Cnty. v. Venango Cnty. Ct. of Common Pleas*, 893 A.2d 1275, 1279–80 (Pa. 2006)). They continue:

In particular, appellate courts—including the U.S. Supreme Court—have made clear that appealing denial of a motion for access to judicial proceedings and records is appropriate, even when the proceeding is over or the records have been revealed, because "[i]t can reasonably be assumed that petitioner will be subjected to a similar closure order and, because criminal proceedings are typically of short duration, such an order will likely evade review." *Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.*, 478 U.S. 1, 6 (1986) (citations omitted). *See Commonwealth v. Long*, 92[2] A.2d 892, 897 [(Pa. 2007)] ("[W]hile [the a]ppellants have obtained access to the jurors' names and addresses in this case and the issue is therefore moot, we will review the issues raised since they are capable of repetition yet likely to evade review and involve an issue important to the public interest."); *Kurtzman v. Hankin*, 714 A.2d 450, 452 (Pa. Super. [] 1998) (explaining that "the appeal of a media intervenor is not rendered moot by the completion of the underlying action" because "there is a reasonable expectation that media intervenors will be subject to such judicial orders again in the future"); *United States v. Simone*, 14 F.3d 833, 836 (3d Cir. 1994) (holding that appeal of denial of access to hearing in a criminal case "falls squarely within that category of cases that are 'capable of repetition, yet evading review'"); *cf. In re 2014 Allegheny Cnty. Investigating Grand Jury*, 173 A.3d 653, 655 (Pa. 2017)

(reversing Superior Court decision that news organization's appeal of denial of its motion for access to records was moot because the appellant had obtained the documents by other means, noting that "the common law right of access to public judicial records is not obviated by any and all forms of dissemination by third-party sources").

*Id.* at 2-3.

Given the cases cited by Appellants, we agree the unsealing of the record does not render their claims moot. They are capable of repetition, will likely evade review in future criminal cases, and involve issues which are important to the public interest — specifically the right of access to judicial records. We also note Appellants challenge not only the denial of their motion to unseal, but the court's denial of their motion to intervene, which was not rendered moot by the unsealing of the record. *See Commonwealth v. Crawford*, 789 A.2d 266, 269 (Pa. Super. 2001) ("When [the a]ppellants' petition to intervene was denied, their recourse was to argue on appeal that the trial court erred in failing to grant them intervenor status.") (citing *Capital Cities Media, Inc. v. Toole*, 483 A.2d 1339, 1344 (Pa. 1984) ("An order denying leave to intervene in these sensitive circumstances is immediately appealable.")).

Accordingly, we proceed to the merits of Appellants' issues, which we address together for ease of disposition. The following legal principles are pertinent to our analysis of Appellants' claims. First, regarding intervention, our Supreme Court has explained, "The filing of a motion to intervene in a criminal case by the news media has long been recognized by this Court as an appropriate means of raising assertions of public rights of access to

information regarding criminal case proceedings." ***Commonwealth v. Fenstermaker***, 530 A.2d 414, 416 n.1 (Pa. 1987) (citations omitted). Moreover,

> it is well established that a question of intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review. Discretion is abused if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason.

***Shirley v. Pennsylvania Legislative Reference Bureau***, 318 A.3d 832, 851 (Pa. 2024) (cleaned up).

Second, our Supreme Court has discussed public access to court documents, as follows:

> [T]he determination of whether an item will be considered a public judicial record or document subject to the common law right of access is a question of law, for which the scope of review is plenary. ***See Buffalo Township v. Jones***, … 813 A.2d 659, 664 n.[]4 ([Pa.] 2002). However, the trial court's decision regarding access to a particular item will be reviewed for abuse of discretion. ***See Fenstermaker***, … 530 A.2d at 420.

> The common law right of access to public judicial records and documents arose from the presumption that judicial proceedings will be open to the public.[5] As the Supreme Court has stated, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." ***Nixon*** [***v. Warner Communications, Inc.***], 435 U.S. [589,] 591 [(1978)] … (footnotes omitted). This Court has viewed the common law right of access as compelled by many of the considerations that underlie the presumption of public trials. ***See Fenstermaker***, … 530 A.2d at 417–18.

> > [5] The United States Supreme Court has held that criminal proceedings are presumed to be open to the public and the press under the First Amendment. ***See Globe Newspaper Co. v. Superior Court***, 457 U.S. 596, 603 … (1982);

- 8 -

> ***Richmond Newspapers, Inc. v. Virginia***, 448 U.S. 555, 576 … (1980).  Similarly, this Court has recognized a presumption of openness stemming from Article I, Sections 9 and 11 of our State Constitution, which provide that an accused has the right to a "speedy, public trial" and that "all courts shall be open."  ***See Fenstermaker***, … 530 A.2d at 417; ***see also Commonwealth v. Contakos***, … 453 A.2d 578, 580 ([Pa.] 1982) (plurality opinion) ("We are mindful ... of our virtually unbroken history of public trials and openness in criminal trials.").
>
> ***
>
> [T]he public right to review and copy judicial records and documents provides an important check on the criminal justice system, ensuring not only the fair execution of justice, but also increasing public confidence and understanding.  ***See Richmond Newspapers***, 448 U.S. at 572 … ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

***Commonwealth v. Upshur***, 924 A.2d 642, 647 (Pa. 2007).

Here, Appellants first contend the court erred by denying their petition to intervene.  Appellants' Brief at 14.  They stress "longstanding Pennsylvania law hold[s] that intervention is the appropriate means for members of the media to exercise their right of access to judicial records."  ***Id.*** (citing ***Fenstermaker***, 530 A.2d at 416 n.1).  Additionally, Appellants note "[n]either [Rodriguez,] nor the [Commonwealth,] contested [their] intervention in this case" for "the limited purpose of asserting their right of access to three sealed judicial records."  ***Id.*** at 15.  Appellants also point out that "[e]ven though the [m]otion to [i]ntervene was filed with the court ahead of the start of the criminal trial[,]" the court "did not entertain argument or an appearance from

[Appellants'] counsel before ruling. Rather, in summary fashion, the court denied the motion….” *Id.*

Appellants further contend the court erred by not issuing any opinion or explanation for why it denied their motion to intervene. *Id.* at 16. They surmise the court denied intervention because it found their “right to access the sealed records was outweighed by prevailing considerations….” *Id.* If true, however, Appellants argue “this would be legal error[,]” as “[a] motion to intervene must be considered separately from any motion that the party requesting intervention seeks to file once intervention is granted.” *Id.* (citing *Fenstermaker*, 530 A.2d at 416 n.1 (“Intervention of this type may properly be termed *de bene esse*, to wit, action that is provisional in nature and for the limited purpose of permitting the intervenor to file a motion, *to be considered separately*, requesting that access to proceedings or other matters be granted.”) (citation omitted; emphasis added)). In sum, Appellants contend the court erred by denying their motion to intervene, leaving them “entirely in the dark and without an opportunity to be heard, despite the fact they pursued the appropriate method of requesting access and no party objected to the intervention.” *Id.*

Next, Appellants assert the trial court erred by denying their motion to unseal the at-issue records in this case. They contend the documents they sought to be unsealed are “judicial records entered on the Court of Common Pleas' docket in the above-captioned case” and, thus, they “are presumptively open to the public and ‘subject to the First Amendment and common law rights

- 10 -

of access.'" *Id.* at 19 (citing ***Commonwealth v. Curley***, 189 A.3d 467, 473 (Pa. Super. 2018) ("Docket entries and other filings in a criminal proceeding are public records.") (citing ***Upshur***, 924 A.2d at 648; ***Fenstermaker***, 530 A.2d at 419)). Nevertheless, the court issued no "sealing orders explaining why the docket entries were closed to access," thus leaving Appellants with no way of knowing why "the public [was] being denied access to these docket entries." *Id.* at 19-20. Appellants stress,

> [w]hen placing judicial records under seal, courts in Pennsylvania are required to provide specific findings explaining why the presumption of access is not applicable to those records. ***Curley***, 189 A.3d at 473 (holding that the trial court erred in failing to "issue individualized, specific, particularized findings on the record that closure [was] essential to preserve higher values and is narrowly tailored to that interest"). The [trial c]ourt … issued no such findings, leaving [Appellants] unable to ascertain whether they were being deprived of information essential to reporting on this case, and if so why. [Appellants] were not only denied their common law and constitutional rights to access these records, but they were also denied without any explanation of why the presumption was not applicable to those records.

*Id.* at 20.

Appellants further point out,

> [w]hile the [Commonwealth] requested in its Motion to Allow Dissemination and Transcription that "[t]he Commonwealth [seals] this [o]rder to discourage further social media incidents," no party requested that [the trial court] seal the [Commonwealth's] Motion *in Limine*, which was displayed and dissected in open court … before being sealed. Indeed, it seems the court sealed the Motion *in Limine sua sponte*. The court held no hearing and provided no reasoning for the sealing of any of the three documents, even after [Appellants] moved to intervene and unseal. Instead, without holding any hearing, the trial court simply denied [Appellants'] motion the very same day it was filed.

*Id.* at 20-21.

Finally, Appellants' challenge the trial court's failure to offer any explanation for denying their motion to unseal, arguing they are again left to speculate as to the court's reasons for that decision. In so speculating, they posit the court's issuance of "two gag orders in this case[,]" as well as statements made by the court at the May 1st and May 8th hearings, "suggest[] the court had concerns about the impact of pretrial publicity on [Rodriguez's] right to a fair trial and jury selection." *Id.* at 21. **See also** N.T. Hearing, 5/1/25, at 65 (trial court's stating, "I would rather not try to get a jury and find out that every single person has heard something about this [case] that affects their ability to listen to this case."); N.T. Hearing, 5/8/25, at 4 (trial court's stating, "What I would really not like is to see things in the paper and to affect the ability of who we are going to get and whether or not we're going to select a jury."). Appellants insist, however, "general concerns about pretrial publicity affecting a trial alone are not enough to justify denying public access to judicial records." Appellants' Brief at 22. In support, they rely on **Upshur**, where our Supreme Court declared:

> Although the Commonwealth correctly notes that the possibility that pretrial publicity will affect the defendant's right to a fair trial is important, **pretrial publicity is not by itself sufficient to render a trial unfair and prevent public access**. **See Fenstermaker**, … 530 A.2d at 420 (citing **Commonwealth v. Romeri**, … 470 A.2d 498, 502 (Pa. 1983) ("[E]ven if there has been extensive pre-trial publicity, a fair trial is not necessarily precluded.")[, *superseded by statute on other grounds as recognized in* **Commonwealth v. Kocher**, 602 A.2d 1308 (Pa. 1992)]). Indeed, the mere statement of one party that allowing

public dissemination of a record or document will prejudice the trial, without additional evidence, does not warrant a denial of access. ***See id.*** ("[I]n view of the presumption of openness attached to such documents, it is inconsistent to permit the sealing of such affidavits upon the *mere* request of a District Attorney or defense counsel.") (emphasis in original)[.]

***Upshur***, 924 A.2d at 651-52 (some citations omitted; emphasis added).

Ultimately, Appellants contend "there is no evidence that concerns about pretrial publicity, or any other factor, could have warranted closure of these records[,]" especially regarding the Commonwealth's Motion *in Limine*, which "was extensively discussed in open court the day before it was filed under seal." Appellants' Brief at 22, 23 (citing ***Curley***, 189 A.3d at 475 (stating "once evidence has been disseminated to the general public, it cannot be resealed; the cat is out of the bag, so to speak")). Additionally, Appellants insist the court erred by summarily denying their motion to unseal without making "document-by-document findings" regarding each filing they sought to unseal, especially given "that at least some of the information in the filings had already been publicly revealed…." ***Id.*** at 23.

Having carefully considered Appellants' arguments and the governing law, we conclude the court erred in denying both Appellants' motion to intervene and their motion to unseal. First, in regard to Appellants' motion to intervene, the court failed to offer Appellants any opportunity to be heard on their intervention request.[6] It then denied intervention without any

_____

[6] When a petition to intervene is filed in a civil case, Pennsylvania Rule of Civil Procedure 2329 requires the court to conduct a hearing. ***See*** Pa.R.Civ.P. 2329 *(Footnote Continued Next Page)*

- 13 -

explanation, despite its being clear Appellants sought to intervene in order to access sealed information, and the well-settled law directs that intervention is the appropriate means for doing so. *See Fenstermaker*, *supra*. To the extent the court presumably denied intervention because it found meritless Appellants' motion to unseal, that ruling was improper, as the motions should have been considered separately. *See id.*

Second, we cannot determine any valid reason for the court to deny Appellants' motion to unseal the at-issue records. The Commonwealth's two motions, and the court's order granting one of them, were all docketed filings in the underlying criminal case, and were made part of the official certified record. We agree with Appellants the at-issue documents constituted public judicial records. *See Curley*, *supra*. *See also Upshur*, 924 A.2d at 648 ("Certainly, however, any item that is filed with the court as part of the

_____

("Upon the filing of the petition [seeking intervention] *and after hearing*, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention….") (emphasis added). Although there is no analogous Rule of Criminal Procedure requiring a hearing on a petition to intervene filed in a criminal case, trial courts have conducted hearings where members of the media have sought to intervene in order to file a motion to unseal. *See Commonwealth v. Long*, 922 A.2d 892, 895 (Pa. 2007) (explaining the trial court conducted a hearing on the appellant's motion to intervene, after which the court "granted [the a]ppellants standing on September 17, 2003[,]" and then held a second hearing on their unsealing request); *Selenski*, 996 A.2d at 495 (noting the trial court held a hearing on a newspaper's motion to intervene and open a proceeding, after which it entered an order directing the proceeding be closed); *Crawford*, 789 A.2d at 268 (stating a newspaper "sought access as intervenors to the Commonwealth's brief" and "[a]fter a hearing, the trial court refused [the newspaper's] requests").

permanent record of a case and relied on in the course of judicial decision-making will be a public judicial record or document.") (citations omitted).

Nevertheless, the trial court did not conduct a hearing on the Commonwealth's request to seal the two February 10, 2025 docket entries, or place on the record its reasons for doing so and the factors relied upon in reaching that decision. ***See Upshur***, ***supra***; ***Curley***, ***supra***. Moreover, the Commonwealth never even sought the sealing of its Motion *in Limine*, and the substance of the motion was extensively discussed (and displayed) at the public hearing on May 1, 2025. Again, the court sealed this document without any hearing or statement of its reasons for that decision. Under ***Upshur***, the court's apparent concern for pretrial publicity was not enough, in and of itself, to justify its sealing of any of these public, judicial records. ***See Upshur***, ***supra***. The court then summarily denied Appellants' motion to unseal these documents, again without any explanation or statement of reasons. Accordingly, the court violated Appellants' common law right of access to these documents.[7]

---

[7] Given this decision, we also conclude the court violated Appellants' First Amendment right of access, which is "a greater right … than the common law." ***Long***, 922 A.2d at 897. ***See also id.*** at 897 n.6 ("[T]he common law test requires the trial court to balance the presumption of openness against the circumstances warranting sealing of the document, ***see Fenstermaker supra***, whereas under the First Amendment the proceedings can be closed only upon showing a compelling government interest and any restrictions must be narrowly tailored to serve that interest…."). Additionally, as the court's sealing the records was improper, we need not address Appellants' alternative argument that, even if sealing was warranted, it was not "narrowly tailored and supported by specific findings on the record." Appellants' Brief at 24-26 (emphasis omitted).

In sum, the case law discussed *supra* makes clear that the right of access to public judicial records is vital, especially in the criminal context. Public access helps ensure fair trials, promotes public confidence in the execution of justice, and aids the public in understanding court processes and procedures. Here, the trial court's act of sealing judicial records without a hearing or statement of reasons, followed by its decision to summarily deny both Appellants' intervention and unsealing requests without any opportunity to be heard or explanation, constituted a clear abuse of the court's discretion. Accordingly, we reverse the court's May 19, 2025 order. As the entire record in this case has since been unsealed, no further relief is necessary.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2026